STATE of Maine

v.

Anthony ZACCADELLI, Jr.

Supreme Judicial Court of Maine.

Argued Sept. 14, 1983.

Decided March 1, 1984.

Robert VanWyck, Asst. Dist. Atty. (orally), Wiscasset, for plaintiff.

Hart, Stinson, Lupton & Weiss, P.A., Ronald W. Lupton (orally), Bath, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, VIOLETTE, WATHEN and GLASSMAN, JJ.

McKUSICK, Chief Justice.

After a jury trial in Superior Court (Lincoln County), defendant Anthony Zaccadelli, Jr., was convicted of Class A robbery, 17–A M.R.S.A. § 651 (1983). On appeal, defendant contends (1) that the trial justice erred in prohibiting defendant's use in cross-examination of a redacted confession to the crime by another man; (2) that, in order to convict him for Class A robbery, the State had to prove the handgun involved in the incident to be operable and that the State failed to carry that burden; and (3) that the justice presiding at the pretrial suppression hearing erred in concluding that there was both probable cause justifying issuance of a search warrant for defendant's home and reasonable cause for a nighttime search. We affirm the judgment of conviction.

The jury was warranted in finding the following facts. At about 10:00 a.m. on January 22, 1982, George McLain, the assistant grocery manager of Sampson's supermarket in Damariscotta, picked up the daily receipts from the store's bookkeeper for deposit at a local bank. He left the store with the deposit bag, which contained some $12,500 in cash, checks, and foodstamps, and walked out to his car, which was parked in the supermarket parking lot. While unlocking his car door, McLain was approached from behind by defendant and another man. Both assailants wore ski masks totally obscuring their faces. One carried a pistol, and the other carried a broom handle and a container full of paint thinner. The man with the gun told McLain, "Give me the goddamned bag." When McLain handed over the deposit bag, the other man threw the paint thinner in McLain's face, temporarily blinding him. The two assailants ran to a car, later identified as defendant's, which was also parked in the supermarket parking lot, and drove away.

State Police traced defendant's car first to a diner in Waldoboro and then to defendant's home in Bremen. When a police officer visited defendant's house at 1:00 p.m. that day, he found defendant's car parked in the closed garage, but was told by defendant's son that defendant was away in Rockland. When police returned an hour later they were greeted by Zaccadelli himself, who at first claimed he had been home all day, but then changed his story, saying he had been to Rockland and Waldoboro. The police obtained a nighttime search warrant for defendant's residence and car and returned to defendant's home at 11:30 p.m.

that night. Inside a floor safe located in defendant's bedroom they found two ski masks, a .22 caliber automatic pistol, and a bank deposit bag containing approximately $1,640 in cash. Hair samples taken from the ski masks matched the head hair of defendant, and a thumbprint of the book-keeper at Sampson's supermarket was found on one of the bills.

## I.

At trial, defendant sought to cross-examine one of the State's witnesses as to the out-of-court confession given to the witness by one John Alstatt. Alstatt's statement, as reconstructed by defense counsel in chambers, was: "There were four of us involved: myself, Tait [Zaccadelli's co-defendant at trial], Zaccadelli, and another individual named Campbell." Defendant asked the trial justice for a ruling that would permit defendant to ask the State's witness if he had heard anyone not a defendant in the case confess to the robbery, but that would prohibit the State from eliciting the entire Alstatt statement on redirect examination. Defendant contended that the part of the statement inculpating Alstatt was admissible under the exception to the hearsay rule contained in M.R.Evid. 804(b)(3), but that the remainder of the statement inculpating Zaccadelli and his co-defendant Tait was outside the scope of the 804(b)(3) exception and also inadmissible under *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Thus, Zaccadelli sought to use Alstatt's statement to incriminate Alstatt in the robbery and at the same time to edit out that part of the statement that also incriminated Zaccadelli himself as well as Tait and a fourth man.

■ The trial justice excluded the redacted statement because he found there were not sufficient corroborating circumstances indicating the trustworthiness of the statement to satisfy the requirements of M.R. Evid. 804(b)(3). Because we find the redacted statement to be so misleading and inherently prejudicial as to be inadmissible as a matter of law, it is unnecessary to reach the issue whether the trial justice was correct in excluding the evidence under Evidence Rule 804(b)(3).

■ M.R.Evid. 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . .

Generally, the balancing of probative value and danger of prejudice that is required by Rule 403 is committed to the sound discretion of the presiding justice. *State v. Flick,* 425 A.2d 167, 172 (Me.1981); *Simon v. Town of Kennebunkport,* 417 A.2d 982, 986 (Me. 1980). However, despite the discretionary nature of the rule, we have not hesitated to reverse the decision of a lower court either excluding or admitting evidence pursuant to Rule 403 where that decision constituted an abuse of discretion. *Id.,* 417 A.2d at 986; *State v. Willette,* 402 A.2d 476 (Me.1979). Where the proffered evidence (as here, with the redaction) is so inherently misleading and prejudicial that its admission would constitute an abuse of discretion, this court may uphold the trial justice's exclusion of the evidence on that basis, even though the trial justice based his decision on another ground.[1] *See State v. Boutot,* 325 A.2d 34, 37 (Me.1974) (denial of motion to suppress upheld on the basis of lack of standing without reaching the ground given by the trial court); *cf. State v. Gwinn,* 390 A.2d

---

1. Our decision in *State v. Dutremble,* 392 A.2d 42 (Me.1978), is not in conflict with today's ruling. In *Dutremble,* although the trial justice improperly excluded proffered testimony as hearsay, the State asked us to uphold the exclusion because the testimony was unfairly prejudicial. Because we found "nothing in the record to show the trial Justice was exercising his discretion in excluding the testimony," we refused to uphold the exclusion under M.R. Evid. 403. *Id.* at 46. In the instant case, by contrast, the nature of the proffered statement in its redacted form is such that it is inadmissible as a matter of law under M.R.Evid. 403, and we are consequently not hampered by the lack of a discretionary ruling by the trial court.

479 (Me.1978) (where trial court's reasoning for finding a weapon to be "concealable" is erroneous, his conclusion nevertheless may be upheld where evidence established concealability as a matter of law); *State v. Mann*, 361 A.2d 897 (Me.1976) (where trial court reaches correct conclusion of law in excluding impeachment evidence, it is immaterial that an improper reason for the conclusion was given).

Defense counsel here sought a redaction of the Alstatt statement so that it would constitute a confession that Alstatt committed the robbery, but would not reveal Alstatt's implication in the same crime of *three* others, including defendant. The redaction would utterly distort the statement's significance. All of the evidence introduced at trial up until the time defense counsel sought to introduce the redacted statement indicated that only two men held up George McLain. The clear implication of the Alstatt statement as defense counsel would trim it was therefore that either Zaccadelli or Tait was innocent, whereas the full statement had specifically incriminated both men. As such, the redacted statement was so unfairly prejudicial to the State and so misleading to the jury as to be inadmissible as a matter of law under M.R. Evid. 403.

## II.

Defendant Zaccadelli was convicted of Class A robbery under an indictment that

charged, in addition to the intentional infliction of bodily injury, that at the time the offense was committed co-defendant Tait, to Zaccadelli's knowledge, "was armed with a dangerous weapon, to wit: a firearm, to wit: a pistol." [2] Defense counsel's argument on appeal assumes that on this indictment the State, to convict Zaccadelli of Class A robbery, had to prove that the pistol used in the holdup was in fact operable, as is required for it to constitute a "firearm" under the Criminal Code, 17–A M.R.S.A. § 2(12–A) (1983); *State v. Morris*, 440 A.2d 1035 (Me.1982); and that the State failed to carry that burden of proof.

■ Contrary to that position taken by defense counsel, it is not necessary for us to reach the question of the sufficiency of the trial evidence to prove the pistol's operability. The indictment tracks the language of the robbery statute, 17–A M.R.S.A. § 651(1)(E),[3] which defines Class A robbery to have occurred

> if [the defendant] commits ... theft and at the time of his actions:
>
> . . . . .
>
> E. He or an accomplice to his knowledge is *armed with a dangerous weapon* in the course of a robbery as defined in paragraphs A through D.

(Emphasis added) Thus, all that needed to be proved by the State was that to Zaccadelli's knowledge his accomplice was armed with a dangerous weapon.[4] For the Code's

---

**2.** The indictment read in full as follows:

On or about the 22nd day of January, 1982, in the Town of Damariscotta, County of Lincoln, State of Maine, Timothy Tait and Anthony Zaccadelli, Jr. did commit theft by obtaining or exercising unauthorized control over the property of Sampsons Supermarket, Inc., to wit: $5,000.00 in money, food stamps and checks in the amount of approximately $6,000.00 in value, with the intent to deprive Sampsons Supermarket, Inc., thereof, and at the time of the theft Timothy Tait and Anthony Zaccadelli, Jr. did intentionally inflict bodily injury on George McLain, and at the time of their actions, Timothy Tait was armed with a dangerous weapon, to wit: a firearm, to wit: a pistol, in the course of said robbery, and Anthony Zaccadelli, Jr. had knowledge that Timothy Tait was so armed.

**3.** The indictment in this case does not allege the circumstances that require a minimum mandatory sentence under 17–A M.R.S.A. § 1252(5) (1983), because there is no allegation that the crime of robbery was "committed with the use of a *firearm against a person.*" (Emphasis added)

**4.** The indictment charged, and the presiding justice instructed the jury accordingly, that defendant had committed Class A robbery either because he had intentionally inflicted bodily injury on McLain (*see* 17–A M.R.S.A. § 651(1)(D)) or because Tait to defendant's knowledge had been armed with a dangerous weapon in the course of the robbery (*see* 17–A M.R.S.A. § 651(1)(E)), or both. Since it is impossible to determine which of three possible

definition of "dangerous weapon" we turn to 17–A M.R.S.A. § 2(9) (1983). Although subsection 2(9) includes within the definition of "armed with a dangerous weapon" the actual possession of a firearm, paragraph D provides:

> For purposes of this subsection, a thing presented in a covered or open manner as a dangerous weapon shall be presumed to be a dangerous weapon.

Thus, whether or not the pistol allegedly used in holding up McLain was in fact operable, it was by the Criminal Code's definition a "dangerous weapon," the use of which made the robbery a Class A crime under section 651(1)(E).

At no time has defendant argued that his accomplice was not armed with a dangerous weapon. Nor has defendant at any time complained of any variance in the proof of a dangerous weapon. Indeed, on this record such claims would be unavailing. The indictment's specification, "to wit: a firearm," was at most a superfluity whose presence caused no prejudice to Zaccadelli.

### III.

Finally, defendant argues that there was no probable cause supporting the search warrant issued for his house and no "reasonable cause shown" justifying a nighttime search. M.R.Crim.P. 41(c). Review of the affidavit submitted by the police in support of the request for the search warrant shows both claims to be without merit.

■ Defendant concedes that there was sufficient probable cause for the search of his car, but contends that the police affidavit contained insufficient factual allegations to create a reasonable belief that evidence of the crime was present in his house. See State v. Loder, 381 A.2d 290, 292 (Me. 1978). The affidavit stated that a police officer who visited defendant's home on the day of the search had seen a small handgun on Zaccadelli's person and a broom handle inside the door. Both of those items, or

items similar to them, had been seen by witnesses in the hands of the men who robbed George McLain that forenoon. The affidavit further alleged that defendant's car, which had also been linked to the robbery by witnesses, was seen that afternoon parked in the garage attached to defendant's house. From those allegations it would be reasonable for the complaint justice to infer that evidence of the crime had been taken from the car into the house. See State v. Peakes, 440 A.2d 350, 353 (Me. 1982).

■ The affidavit was also sufficient to justify a nighttime search. Under M.R. Crim.P. 41(c) a judge or complaint justice may authorize the execution of a search warrant later than 7:00 p.m. or earlier than 7:00 a.m. only for "reasonable cause shown." We have found an affidavit adequate to support a nighttime search warrant where "it asserted a positive belief, supported by probable cause, that the property sought would be found at the home of the defendant, and it also disclosed, in describing the property to be searched for, that it was capable of being altered, moved or destroyed on short notice." State v. Arnold, 421 A.2d 932, 936 (Me.1980). Here, the affidavit specifically described the evidence to be searched for—a handgun, a broom handle, a ski mask, and the stolen money—and asserted a positive belief that the evidence was in the home of defendant. The nature of this evidence supports the reasonable inference that it was capable of being altered, moved, or destroyed. Furthermore, the allegations that police had visited defendant's home twice that day and that defendant had responded to the officer's questions in an evasive manner support the inference that defendant knew he was under suspicion.

The entry is:

Judgment of conviction affirmed.

All concurring.

bases the jury used in finding defendant guilty of Class A robbery, we must approach this

issue as if the intentional infliction of bodily injury was not pleaded or proved.