STATE of Maine

v.

Paul SALLEY.

Supreme Judicial Court of Maine.

Argued May 7, 1986.

Decided Aug. 18, 1986.

Paul Aranson, Dist. Atty., Laurence Gardner (orally), Asst. Dist. Atty., Portland, for plaintiff.

Edward Klein (orally), Portland, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN, GLASSMAN and SCOLNIK, JJ.

NICHOLS, Justice.

The Defendant, Paul Salley, brings consolidated appeals from convictions of possession of scheduled drugs, 17–A M.R.S.A. § 1107 (1983), and theft by receiving, *id.* § 359, following a jury trial in Superior Court, Cumberland County. He asserts on

appeal (a) that evidence supporting the drug conviction, items that were seized in a nighttime search of his dwelling, should have been suppressed, (b) that theft-related evidence seized pursuant to a warrant obtained after a security search also should have been suppressed, and (c) that there was insufficient evidence of value to support the conviction of a Class C theft.

We affirm the judgments of conviction.

In May, 1984, Detective James Langella of the State's Organized Crime Unit received reports of heavy vehicular and foot traffic to and from the Defendant's residence in North Yarmouth. Other officers also informed Langella that the Defendant was trafficking in narcotics. On May 29, 1984, a confidential informant told Langella he had bought cocaine from the Defendant. Langella decided to set up a controlled buy that same day. The informant, accompanied by an undercover agent, drove to the Defendant's residence in the early evening and returned about an hour and a half later with a gram of white powder, which field-tested as cocaine. On July 5, Langella orchestrated a second controlled buy. A different undercover agent accompanied the informant on this venture. The Defendant was not home, but the undercover agent bought cocaine from the Defendant's female companion. The agent reported seeing drug paraphernalia and weapons inside the residence.

The informant participated in a third controlled buy on the evening of July 12. This time he bought LSD from the Defendant and told Langella that he had seen a big bag of marijuana on a table and a large amount of LSD in the freezer. The Defendant told the informant that he was out of cocaine but would be getting more later in the evening. Based on the three controlled buys, Langella concluded that he had probable cause to believe that the Defendant was trafficking in scheduled drugs.

Langella applied for a search warrant to be executed that night. He sought the nighttime search on the ground that the marijuana and LSD to be seized were subject to rapid sale. Around midnight he took these materials to a complaint justice who reviewed the warrant and affidavit and thereupon approved them. Langella then prepared to execute the warrant.

A total of eight officers went to the Defendant's residence, a one-story dwelling at the end of a long unpaved driveway. Police entered the house, located the drugs specified in the warrant, and seized them as well as drug paraphernalia, weapons, and cash. The Defendant and his female companion were then arrested. While other officers completed an inventory, in order to assure the officers' safety, Langella assigned Deputy Sheriff Paul Mingo to perform a security search of the area surrounding the Defendant's residence.

Mingo began his search by walking in the direction of a larger, unfinished house that was on the property about 75 feet away from the Defendant's residence.[1] As he walked by the unfinished house, his flashlight illuminated a saw and an air compressor just inside a window. Mingo identified both items as having been stolen from a nearby house recently.[2] Neither Mingo nor any other officer entered the unfinished house during the July 12 search; instead, police obtained thereafter a separate search warrant, which they executed three days later. During the second search, police seized numerous tools, three fishing rods, and several pieces of leather clothing.

On September 10, 1984, the Defendant was charged with multiple counts of drug-related offenses, particularly possession of and trafficking in scheduled drugs, 17–A M.R.S.A. §§ 1103, 1107 (1983). In a separate indictment issued the same day, he

---

1. Langella knew the unfinished house was on the property and also knew that the Defendant was building it.

2. The officer was able to identify the items based on the owner's description. A piece of wire protruded from the saw, and the air compressor was repaired in a particular spot with tape.

was also charged with a single count of theft by receiving. *Id.* § 359.[3] On November 20, the Defendant filed a motion to suppress all evidence seized in both buildings, on the grounds that probable cause did not exist and that a night search was unjustified. The Superior Court denied the motion. After separate jury trials on October 22 and 30, 1985, the Defendant was convicted of possessing scheduled drugs and theft by receiving. He appealed both convictions, and we consolidated the two appeals.

The Defendant first contends that reasonable cause did not exist for the issuance of a nighttime warrant here. The standard governing such warrants is contained in M.R.Crim.P. 41(c), which in° relevant part provides:

> The warrant shall direct that it be served between the hours of 7 a.m. and 7 p.m., unless the judge or complaint justice, by appropriate provision in the warrant, and for reasonable cause shown, authorizes its execution at another time.

Reasonable cause exists for a night search when the warrant and affidavit assert a positive belief, supported by probable cause, that the evidence to be seized will be at the person's home and further disclose that the evidence is capable of being altered, moved, or destroyed on short notice. *State v. Zaccadelli*, 472 A.2d 928, 932 (Me. 1984); *State v. Arnold*, 421 A.2d 932, 936 (Me.1980).

The Defendant contends that the search of his house was unreasonable because police sought nighttime execution of the warrant for safety reasons only.[4] This argument lacks merit. The warrant in this case objectively satisfies M.R.Crim.P. 41(c). It clearly asserts a positive belief that

drugs would be found at the Defendant's house. That belief was based on the observations, contained in the affidavit, of the informant as well as an undercover agent, both of whom had seen drugs and drug paraphernalia in the house. The complaint justice could have inferred from reading the affidavit that the drugs to be seized were capable of being altered, moved, or destroyed on short notice.[5] The complaint justice would also have been warranted in concluding that there was a reasonable possibility the drugs seen by the informant would be sold that evening. We conclude that an objective reading of the affidavit clearly establishes reasonable cause for this nighttime warrant.

Next, the Defendant maintains that the security search that led to discovery of the stolen property inside the unfinished house was unreasonable. We reject that contention as well. The warrant, being lawful, authorized police to enter the Defendant's premises, including the area surrounding the one-story dwelling. Deputy Mingo was thus in a place where he had a legal right to be when he saw the stolen property, and his viewing of that property therefore does not amount to a warrantless search for Fourth Amendment purposes. *State v. Wentworth*, 480 A.2d 751, 757 (Me.1984); *State v. Sapiel*, 432 A.2d 1262, 1266 (Me.1981). Furthermore, the safety search was minimally intrusive; police did not enter the unfinished house that night but instead returned three days later with another search warrant. We conclude that the safety search was reasonable and that the Defendant's constitutional rights were not violated.

Finally, the Defendant contends that the Superior Court improperly aggre-

---

**3.** The Defendant's female companion was also named in both indictments, but she later pleaded guilty to one drug charge.

**4.** The Defendant attempts to substantiate this argument by pointing to a statement detective Langella made during the suppression hearing that he preferred night searches for safety reasons.

**5.** *See Zaccadelli*, 472 A.2d at 932 (handgun, broomhandle, ski mask, and stolen money were capable of being altered, moved, or destroyed on short notice); *Arnold*, 421 A.2d at 936 (same conclusion reached regarding head and facial hair, bloodstained clothing, and watchband).

gated the value of items stolen in two separate robberies and that there was insufficient evidence of the market value of the stolen property. The stolen property indeed came from two different sources but that does not preclude aggregating its value for purposes of proving theft by receiving. The State sufficiently established that the market value of each of the two groups of items was well over the $1,000 required for the Defendant's conviction of a Class C theft, 17-A M.R.S.A. §§ 359, 362(3)(A) (1983). The Defendant's arguments concerning the insufficiency of the evidence are therefore without merit.

The entry is:

Judgments affirmed.

All concurring.