**STATE of Maine**

v.

**James WARD.**

Supreme Judicial Court of Maine.

Argued March 18, 1993.
Decided May 17, 1993.

---

Jeffrey Silverstein (orally), Asst. Dist. Atty., Bangor, for the State.

J. Hilary Billings (orally), Bangor, for defendant.

Before WATHEN, C.J., and GLASSMAN, CLIFFORD, COLLINS, RUDMAN and DANA, JJ.

DANA, Justice.

The State appeals from an order of the Superior Court (Penobscot County, *Kravchuck, J.*) suppressing the evidentiary fruits of a search of James Ward's Bangor apartment conducted by the police under the authority of a search warrant. On appeal, the State contends that contrary to the findings of the Superior Court, the affidavit offered in support of the warrant did provide a substantial basis for the District Court's finding of probable cause to believe that Ward's residence contained illegal contraband. We agree and therefore vacate the order of the Superior Court.[1]

On February 25, 1992, Ryan Carter, an agent for the Maine Drug Enforcement Agency, went to the home of District Court Judge Andrew Mead and requested the issuance of a warrant to search Ward's Bangor apartment. In support of his application, Carter supplied an affidavit reciting information received primarily from unnamed confidential informants. Judge Mead issued a nighttime search warrant. Pursuant to the immediate execution of the search warrant, agents discovered, among other things, bags of marijuana, marijuana related equipment, and business records relevant to marijuana trafficking.

Ward was subsequently indicted by a Penobscot County grand jury on one count of unlawful trafficking in marijuana in violation of 17–A M.R.S.A. § 1103 (Supp.1992). Thereafter, the Superior Court granted Ward's motion to suppress the fruits of the search, concluding that Agent Carter's affidavit did not provide a substantial basis to support the District Court's initial finding of probable cause.

We review the totality of the circumstances in evaluating whether probable

---

**1.** In light of our conclusion that the affidavit provided the District Court with the substantial basis required for a probable cause determination, we reject at the outset Ward's contention that the affidavit fails to contain allegations sufficient to authorize a nighttime search of his apartment. "Reasonable cause exists for a night search when the warrant and affidavit assert a positive belief, supported by probable cause, that the evidence to be seized will be at the person's home and further disclose that the evidence is capable of being altered, moved, or destroyed on short notice." *State v. Salley,* 514 A.2d 465, 467 (Me.1986) (citations omitted). We conclude, as we did in *State v. Salley,* that the District Court "could have inferred from reading the affidavit that the drugs to be seized were capable of being altered, moved, or destroyed on short notice." *Id.* (footnote omitted).

cause exists for the issuance of a search warrant. *See State v. Knowlton*, 489 A.2d 529, 531–33 (Me.1985) (adopting Supreme Court's holding in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). In so doing, we review the District Court's finding of probable cause directly, *see State v. Haley*, 571 A.2d 831, 832 (Me. 1990), and "must read the affidavit 'with all reasonable inferences that may be drawn to support the [District Court's] determination.'" *State v. Lutz*, 553 A.2d 657, 659 (Me.1989) (quoting *State v. Knowlton*, 489 A.2d at 532). Furthermore, "in keeping with the deference to be accorded the decision of a neutral magistrate to issue a search warrant, the affidavit should be read *positively* to determine whether it can fairly be read to support the complaint justice's action." *State v. Knowlton*, 489 A.2d at 532–33 (emphasis in original). "[B]oth magistrates and courts must test the affidavit 'in a common sense and realistic fashion.... Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area.'" *State v. Lutz*, 553 A.2d at 659 (quoting *United States v. Ventresca*, 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965)). Thus, we are not to give the affidavit a "grudging reading" and will uphold the District Court's determination if there exists a substantial basis for the court's "single required finding of probable cause." *State v. Haley*, 571 A.2d at 832 (citations omitted).

■ The totality of the circumstances described to the District Court in Agent Carter's affidavit establish the required substantial basis for the court's issuance of a warrant to search Ward's apartment.[2] The affidavit was based, in large part, on information received from two confidential informants. The first informant, whose information was relayed to Agent Carter through an individual identified as "NRC Michael Harrington,"[3] stated that he had been present at Ward's residence on January 3, 1992 and observed what appeared to be one to two pounds of marijuana on Ward's kitchen table, and he had also observed marijuana in Ward's apartment on prior occasions. The affidavit further recites that the informant's real identity is known to Harrington and that the informant has provided Harrington with reliable information in the past. Agent Carter stated that he verified Ward's address through the telephone company's billing department and the address he received was the same as provided by the first informant.

The second informant, with whom Agent Carter spoke directly, stated that he purchased marijuana from Ray Smith over a ten year period; that Smith said his supplier was James Ward; that on January 24, 1992, the informant and Smith went to Ward's apartment and purchased marijuana from Ward for $2,200; and that Ward, on that date, showed the informant three or four other bags of marijuana from which he could choose.

The affidavit then recites the circumstances surrounding an attempted controlled drug purchase from Ward earlier that evening. The informant, while wearing a body wire and carrying $2,200 supplied by Agent Carter, met with Ray Smith at Smith's residence prior to going to Ward's apartment where he intended to make the purchase. When Smith wanted to take the money to Ward's apartment alone, the informant left Smith's apartment with the money and met with Agent Carter at a prearranged location. While still being monitored through the body wire, the informant phoned Smith and asked if "Jim would be willing to hold the marijuana until tomorrow night." Smith replied "I'll ask him" and "I'll try to get him to hold one until tomorrow."

**2.** In reaching our holding, we give no weight to the clerical error concerning the date on which the affidavit was signed. The testimony presented at the suppression hearing sufficiently showed that the error was the product of police failure to update the document in the word processor. While such sloppiness in affidavit production is frowned on, and not lightly disregarded, Ward, in the present case, chose not to raise a *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), challenge to the affidavit.

**3.** "NRC" stands for the Northern Regional Commander of the Bureau of Intergovernmental Drug Enforcement.

The affidavit then recites Agent Carter's educational and employment background. Based on the information learned from the confidential informants, Agent Carter stated that he had reason to believe Ward's apartment contained scheduled drugs, including marijuana, business records relevant to marijuana trafficking, and other drug paraphernalia.

Ward now contends that the lack of sufficient indicia of the informants' reliability necessarily precludes a finding of probable cause. However, an "informant's reliability is not, under the *Gates* test, to be considered as an element separate and apart from the general inquiry whether the affidavit as a whole establishes a sufficient basis for the complaint justice to find probable cause." *State v. Knowlton*, 489 A.2d at 532. Furthermore, the second informant's admission that he purchased one pound of marijuana from Ward on January 24, 1992, and had been purchasing marijuana for the past ten years adds much support to the finding of the District Court. "Actions by an informant against his penal interest 'may justify an affiant's reasonable belief of credibility of the informant's story,' and therefore also serve to corroborate and reinforce the underlying factual assertions." *State v. Knowlton*, 489 A.2d at 532 n. 1 (quoting *State v. Appleton*, 297 A.2d 363, 369 (Me.1972)). Further, the circumstances surrounding the attempted controlled drug transaction, and the subsequent monitored phone conversation also add weight to the District Court's probable cause determination.

In short, viewing the totality of the circumstances surrounding the affidavit in the appropriate deferential light, we conclude that a substantial basis exists in support of the District Court's finding of probable cause. "While a restrictive, hyper-technical reading of [Agent Carter's] affidavit might lead the reader to quibble over whether the facts expressly stated establish probable cause, a court must not employ any such negative approach in reviewing such an affidavit." *State v. Knowlton*, 489 A.2d at 532.

The entry is:

Order granting defendant's motion to suppress evidence vacated; case remanded to the Superior Court for entry of an order denying defendant's motion to suppress.

All concurring.