**STATE of Maine**

**v.**

**John BARCZAK.**

Supreme Judicial Court of Maine.

Argued May 8, 1989.
Decided July 11, 1989.

James E. Tierney, Atty. Gen., Michael Westcott, and Wayne S. Moss (orally), Asst. Attys. Gen., Augusta, for the State.

Thomas VanHouten, Wood & VanHouten, Sanford, William Bolton (orally) and Thomas C. Troy, Wakefield, Mass., for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and COLLINS, JJ.

GLASSMAN, Justice.

John Barczak appeals from the judgments of the Superior Court (Lincoln County, *Brennan, J.*) entered on the jury verdicts finding him guilty of intentionally or knowingly causing the death of Dawn C. Denny and Evelyn Mary Meyer. *See* 17–A M.R.S.A. § 201(1)(A) (1983). The victims, employed as clerks at Lil' General Store in Sanford, died of multiple bullet wounds on the evening of June 11, 1987. Barczak contends that the trial court erred in denying his motions to dismiss the indictment, to suppress evidence seized pursuant to a search warrant, and to suppress inculpatory statements made by him. He also contends the court erred in its instruction to the jury relating to intoxication. We affirm the judgments of the Superior Court.

I

Barczak first contends that the trial court erred in denying his motions to dismiss the indictment or alternatively to stay the proceedings to allow a voir dire of the grand jurors based on the ground of prejudicial pre-indictment publicity.

Pursuant to M.R.Crim.P. 6(b)(2), a motion to dismiss the indictment may be based on the ground that a state of mind existed on the part of a juror that prevented the juror from acting impartially. We have recognized "that the news media, through constant bombardment of the public with reports which tend to arouse public vindictiveness, may, in some instances, poison the public state of mind to such a degree that 'the potential for bias and prejudice become manifest.'" *State v. Haberski*, 449 A.2d 373, 377 (Me.1982) (quoting *State v. Warren*, 312 A.2d 535, 539 (Me. 1973), *cert. denied*, 459 U.S. 1174, 103 S.Ct. 823, 74 L.Ed.2d 1019 (1983)). The question is not whether there is adverse media attention but whether the publicity was "so invidious as to arouse a public vindictiveness which would preclude impartial consideration." *Id.* A voir dire of jurors becomes essential when the potential for bias and prejudice is manifest. *State v. Warren*, 312 A.2d 535, 539 (Me.1973). Whether prejudice is manifest is a question of fact for the trial court's determination and the scope of an examination is a matter of discretion for the court. *Id.*

The trial court found here that the main focus of the newspaper articles submitted with Barczak's motion was directed to the fact that the District Court had granted bail in this homicide case and that bail was rarely permitted a defendant in such cases. The court confirmed its finding by an inquiry of the Grand Jury foreperson with counsel for both parties being given the opportunity to question the foreperson. The trial court properly determined that although the newspaper reports were adverse to Barczak, they were not so inflammatory or biased as to require an *in*

*camera* voir dire of every grand juror or to compel the court to find that Barczak was deprived of his right to an impartial grand jury.

## II

Barczak next challenges the legality of the search warrant dated June 19 and amended June 22, 1987, obtained by Maine State Police Detective Steven Holt to search Barczak, his home and his vehicle. He first argues that the court erred in finding that the warrant affidavit supported a finding of probable cause. We have stated:

> Under the totality of the circumstances test, the magistrate's finding of probable cause is to be made upon " 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' " Our review of the affidavit includes all reasonable inferences that may be drawn in support of the magistrate's determination. In reviewing a magistrate's finding of probable cause, the Superior Court should not engage in de novo review. Rather, review must be limited to ascertaining whether there was a "substantial basis" for the magistrate's finding of probable cause.

*State v. Marquis,* 525 A.2d 1041, 1043 (Me. 1987) (citations omitted) (quoting *State v. Knowlton,* 489 A.2d 529, 531 (Me.1985) (quoting *Brinegar v. United States,* 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949))).

■ The affidavit, dated June 19, 1987 submitted by Detective Holt, states with specificity the following: Shortly after the victims were murdered and before such information was released to the public, Barczak informed several persons that the two victims had been shot; Barczak stated that he had received the information from a police officer at the scene, but the two police officers who spoke with Barczak that night did not provide him with any of the details of the crime; Barczak fitted the composite description given by two witnesses who had seen a man in the store arguing with one of the victims shortly before the murders occurred; and the physician performing the autopsies and a detective of the State Police Crime Laboratory were both of the opinion that the murder weapon was a .38 caliber or a .357 caliber gun and Barczak owned a .357 Magnum revolver. Thus, the trial court properly held that the affidavit set forth a substantial basis "for the magistrate's finding of probable cause." *State v. Marquis,* 525 A.2d at 1043.

■ Barczak next argues that the court erred in finding that the amended affidavit dated June 22, 1987 requesting a nighttime search warrant set forth reasonable cause for the night warrant. The amended affidavit states that Detective Holt was unable to execute the search warrant dated June 19, 1987 because Barczak had not been home or observed in the Sanford area and that the detective had been informed by a neighbor that Barczak usually left for work before 7:00 a.m. and returned home at 5:30 to 6:00 p.m.

M.R.Crim.P. 41(c) states that a "warrant shall direct that it be served between the hours of 7:00 a.m. and 7:00 p.m., unless the judge or complaint justice, by appropriate provision in the warrant, and *for reasonable cause shown,* authorizes its execution at another time." *Id.* (emphasis added). We have stated that "[r]easonable cause exists for a night search when the warrant and affidavit assert a positive belief, supported by probable cause, that the evidence to be seized will be at the person's home and further disclose that the evidence is capable of being altered, moved, or destroyed on short notice." *State v. Salley,* 514 A.2d 465, 467 (Me.1986). As in *Salley,* the affidavit here asserted a positive belief, and it is supported by probable cause, that the evidence to be seized, *e.g.,* a gun and clothing that might show blood stains and that could be compared to the fibers found on the victims, would be found at Barczak's house or on his person or in his car. The complaint justice could have inferred that the evidence was capable of being altered, moved or destroyed on short notice. *Id.* It was important that Barczak, his vehicle and his house be searched at the same

time. Otherwise, a search of the unoccupied house could have put Barczak on notice to hide or destroy any perishable evidence in his car or on his person. Accordingly, the trial court properly concluded reasonable cause was shown for a nighttime search. *State v. Salley*, 514 A.2d at 467; *State v. Arnold*, 421 A.2d 932, 936 (Me.1980).

■ Barczak also contends that the trial court erred in finding no fatal omission in Holt's affidavit in support of the application for the search warrant. He argues that Holt intentionally or with reckless disregard for the truth omitted from the affidavit material facts regarding other suspects. The fact that there are other suspects existing at the time a warrant is procured does not, standing alone, negate the procurement of the search warrant. We have stated that "an affidavit which on its face establishes probable cause will not be voided and the fruits of the search suppressed, unless the defendant proves by a preponderance of evidence that the affiant intentionally or with reckless disregard for the truth made false assertions of material facts or omitted material facts known to be true." *State v. Rand*, 430 A.2d 808, 821 (Me.1981). If omitted facts negate the probable cause, suppression is required. *Id.* However, omissions resulting from negligence or good faith mistakes will not invalidate an affidavit sufficient on its face to establish probable cause. *Id.* We review the trial court's finding only for clear error. *Id.* There is competent evidence in the record to support the court's finding that prior to seeking the search warrant the police had taken reasonable steps to investigate the other known suspects and their conclusion to focus on Barczak as the prime suspect was reasonable. The trial court properly held that no material facts that would negate probable cause for the issuance of the search warrant had been omitted from Holt's affidavit.

### III

Barczak next challenges the trial court's denial of his motion to suppress statements made by him to the police on June 23, 1987.

He contends that his statements were involuntary because of his intoxication and were obtained in violation of his constitutional rights as declared in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

■ We review for clear error the trial court's finding that the statements were made voluntarily. The trial court must consider the totality of circumstances and determine whether the State has proved beyond a reasonable doubt that each statement was " 'the result of defendant's exercise of his own free will and rational intellect.' " *State v. Franklin*, 463 A.2d 749, 752 (Me.1983) (quoting *State v. Caouette*, 446 A.2d 1120, 1123 (Me.1982); *see also State v. Mikulewicz*, 462 A.2d 497, 501 (Me.1983) ("A confession is voluntary if it results from the free choice of a rational mind, if it is not a product of coercive police conduct, and if under all the circumstances its admission would be fundamentally fair.").

We also review the trial court's findings regarding the *Miranda* issues for clear error. *State v. Knights*, 482 A.2d 436, 440 (Me.1984). In *Knights* we stated that

[i]t is the State's burden in any given situation to demonstrate by the federal standard of *proof by a preponderance of evidence* that the preliminary factors of a custodial interrogation are not present to trigger the need for *Miranda* warnings, or, if these preliminary factors do exist, that there was compliance with the *Miranda* requirements and, in relation to any claim of waiver of *Miranda* rights, that the same was made knowingly, understandingly and voluntarily.

*Id.* (emphasis in original).

The record reflects that Barczak was interviewed at the Sanford police station on the evening of June 22, 1987, where he was fingerprinted, photographed and served with a warrant to search his home, truck and person. The search was completed at approximately 12:30 a.m. As had previously been arranged, at approximately 1:00 p.m. on June 23 two officers went to Barczak's home to pick him up for a polygraph test.

The officers were unable to locate Barczak at his home. The canine police unit was called in after a neighbor stated that she had heard a gunshot or a tire blow from the vicinity of Barczak's home. A search unit eventually found Barczak lying face down on the ground in the woods behind his home. There were three empty and nine full beer cans near the defendant. No *Miranda* warnings were given to Barczak at that time.

■ Barczak first argues that inculpatory statements made by him while walking out of the woods should be suppressed because he was intoxicated and therefore the statements were involuntary. He also argues the statements were a product of custodial interrogation. Although there was evidence that Barczak was under the influence of alcohol, there is testimony that he was capable of understanding requests to stand up, that he stood without difficulty after an initial unsteadiness, and that he was able to walk out of the woods without assistance and communicate in a rational manner. As we have stated, "A person under the influence of alcohol is not necessarily incapable of waiving his constitutional rights or giving a voluntary statement, if despite the degree of intoxication he is aware and capable of comprehending and communicating with coherence and rationality." *State v. Finson*, 447 A.2d 788, 792 (Me.1982). There is also competent evidence to support the trial court's finding that the statements were spontaneously made by Barczak. The trial court properly found that the statements were voluntary and not the product of custodial interrogation.

■ Barczak's contention that his statements while in the police car with Detective Holt were made involuntarily and in violation of his constitutional rights is without merit. The record reflects that Barczak agreed to go for a ride with the detective and that he spontaneously made inculpatory statements prior to being questioned by Holt. Immediately after the statements were made, Detective Holt stopped the vehicle and read the *Miranda* warnings to Barczak. Barczak waived his rights and in response to Holt's questions expanded on his earlier statements. The statements were recorded on tape. Barczak was placed under arrest and driven to the Sanford Police Department where he acknowledged in writing that Holt had given him the *Miranda* warnings while in the car and that he understood his rights and waived them prior to being questioned by Holt. Accordingly, the trial court properly refused to suppress the statements.

■ Nor is there merit in Barczak's final contention that the trial court's refusal to suppress a videotape statement made at the Sanford Police Department is clear error. The record clearly supports the trial court's findings that Barczak was again given the *Miranda* warnings, that he knowingly and voluntarily waived his rights, and that he agreed to be interviewed.

IV

■ Barczak finally contends that the trial court erred in its instruction to the jury on the insanity defense. Barczak originally entered a not guilty plea to each of the charged offenses but later entered the additional plea of not criminally responsible by reason of insanity pursuant to M.R. Crim.P. 11(a)(1). Barczak did not elect a bifurcated trial as provided in 17–A M.R. S.A. § 40 (Supp.1988). Accordingly, the issues of both guilt and insanity were submitted simultaneously to the jury, and it was necessary for the trial court to instruct the jury both on the role of intoxication as related to the culpable state of mind for the offenses charged and the role of intoxication with relation to the insanity defense. Contrary to Barczak's contention on appeal, nothing in the record suggests that the jury misunderstood or was confused about the role of intoxication in the case.

The entry is: Judgments affirmed.

All concurring.