**STATE of Maine**

v.

**Nicolo LEONE.**

Supreme Judicial Court of Maine.

Argued June 12, 1990.

Decided Oct. 5, 1990.

James E. Tierney, Atty. Gen., Wayne S. Moss (orally), Asst. Atty. Gen., Augusta, for plaintiff.

Thomas Connolly (orally), Portland, for defendant.

Before McKUSICK, C.J., and WATHEN, GLASSMAN, CLIFFORD and COLLINS, JJ.

CLIFFORD, Justice.

The defendant, Nicolo Leone, appeals the judgments of the Superior Court (Lincoln County, *Brody, C.J.*) entered on jury verdicts finding him guilty of manslaughter, 17–A M.R.S.A. § 203(1)(B) (Supp.1987), and two counts of attempted murder, 17–A M.R.S.A. §§ 152, 201(1)(A) (1983). We find no error and affirm the judgments.

The record reveals that on the afternoon of July 23, 1988, Leone parked a car in dense undergrowth off a secluded stretch of the River Road in Lewiston. When he attempted to drive out of the area, he discovered that the car was stuck. While waiting for a passerby, Leone accidentally shot himself in the leg with a .44 caliber revolver in his possession. He then asked a passing mail carrier to call a tow truck. Observing what appeared to be blood on Leone's jeans and shirt, the mail carrier went to a residence on River Road and called the Lewiston police.

Lewiston Police Officers David Payne, Donald Mailhot and David Chamberlain responded to the call. From his vantage point in the brush at the side of the road, Leone saw a police cruiser pass by and ran into the dense woods, taking the holstered .44 revolver with him. Officer Payne, the first on the scene, left his cruiser and ran after Leone as the other officers were arriving. Some moments later,

Chamberlain and Mailhot heard Payne shout over his radio, "Look out, he's got a gun, he's got a gun," followed by six to ten gunshots. Payne then called into his radio, "I'm pinned down, I'm pinned down," and "I'm hit, I'm hit." This was followed by a scream.

Chamberlain and Mailhot entered the woods. As they moved through the dense undergrowth in the direction of the shots, they heard Leone calling out repeatedly, "I give up, don't kill me." Officer Mailhot instructed Leone to throw out his gun and keep his hands in the air. The officers identified Leone's voice as coming from behind a large pine tree. Mailhot crawled around one side of the tree and Chamberlain the other. Chamberlain then called for Leone to throw out his gun and keep his hands up. In response to Chamberlain's demand, Leone threw something into a nearby stream and held out his empty hand. By this time, Mailhot could partially see Leone through the undergrowth and observed that he was holding a cocked revolver upright behind the tree with his finger on the trigger. Mailhot called this information to Chamberlain and then ordered Leone to drop the gun or be killed. Leone complied, and the officers handcuffed him.

Chamberlain and Mailhot questioned Leone at the scene concerning Officer Payne's location. When Leone did not respond, Chamberlain grabbed Leone's hair, pounded his head on the ground several times and repeated the questions. Leone did not respond until Mailhot held a cocked service revolver to Leone's head and threatened to kill him. After Leone answered, Mailhot went to find Officer Payne. Officer Chamberlain asked Leone if he was alone, and Leone answered, "Yes." Chamberlain then asked concerning the "gun" thrown out by Leone. Leone replied that it was not a gun but "some cocaine" that he threw. Several minutes later, Leone stated without prompting that he "didn't shoot the cop, the other guy did it." When Chamberlain asked Leone concerning this other person, Leone stated, "I'm not going to tell you. If you want any information from me, you'll have to get it from my lawyer." Chamberlain pulled Leone's head back by the hair and repeated the questions, but Leone did not respond. Leone refused to answer even when another officer pointed a shotgun at him and asked the question. Instead, he stated, "Go ahead and pull the trigger if you're man enough."

Officer Payne was dead at the scene, having been shot twice in the right chest area. Leone had been shot in the left buttock with the bullet traveling upward through his body and lodging behind his heart. Emergency medical technicians arrived, treated Leone at the scene and transported him to St. Mary's General Hospital. During this time, Leone made several statements to the effect that he "was shot ducking trying to get away," and "don't know why they shot me. I didn't do it." Later, while being treated at the emergency room of the hospital, Leone asked to see his wife. On arrival, she spoke to Leone asking why he did it, and Leone responded, "Because I don't care anymore."

Following his indictment[1] on the charges of the murder of Officer Payne and the attempted murders of Officers Chamberlain and Mailhot, Leone filed a motion to suppress the statements made to the police officers while in the woods. After a hearing, at which it was undisputed that the police had not advised Leone of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the court (*Brody, C.J.*) suppressed Leone's statement to Chamberlain and Mailhot as to the location of Officer Payne and his response, "Go ahead and pull the trigger if you're man enough," finding that these statements were the product of coercion. The court found that the remaining statements were voluntary beyond a reasonable doubt and that two of those statements fell within the "public safety" exception to the *Miranda* rule articulated by the United

---

**1.** Leone was indicted in Androscoggin County. Venue was later changed to Lincoln County where the trial was held.

States Supreme Court in *New York v. Quarles*, 467 U.S. 649, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984). The court also found that Leone's remaining statement that someone else shot Payne was not a product of police interrogation and therefore not within the ambit of the *Miranda* rule.

After a trial, the jury found Leone not guilty of the murder but guilty of manslaughter of Officer Payne and guilty of the attempted murder of Officers Chamberlain and Mailhot. From the judgments entered on these verdicts, Leone appeals.

### I.

Leone first contends that the trial court erred in not suppressing all his statements to the police officers while at the scene. His argument is twofold: he was in police custody and not advised of his *Miranda* rights, and all his statements must be viewed as a continuum, beginning and ending with a statement made at the point of a gun, demonstrating a lack of voluntariness.

█ We review the trial court's findings as to the *Miranda* issues and as to the voluntariness of Leone's statements for clear error. *State v. Barczak*, 562 A.2d 140, 144 (Me.1989). First, the State has the burden of establishing by a preponderance of the evidence that the *Miranda* warnings were not needed or, if given and a waiver of those rights claimed, that the waiver was made knowingly, understandingly, and voluntarily. *Id.* In *Quarles*, the Supreme Court enunciated a "public safety" exception to the prophylactic *Miranda* rule, which protects the fifth amendment privilege against self-incrimination but allows the police to engage in custodial questioning to elicit information calculated to protect the public or themselves. *Id.* 467 U.S. at 658–59, 104 S.Ct. at 2632–33.

█ Here, a gun battle had just erupted in a densely wooded area. Leone had a cocked revolver in his hand immediately prior to being taken into custody. Under these circumstances it was reasonable for Officers Chamberlain and Mailhot to ask Leone if he was alone and about the gun the officers thought he had tossed into a nearby stream. After Leone's later statement that another person had shot Officer Payne, it was also reasonable for the officers to inquire as to the identity of that other person. Accordingly, the trial justice had a rational basis for finding by a preponderance of the evidence that these questions by the officers and Leone's responses fell within the public safety exception to *Miranda* as articulated in *Quarles*, and the trial court did not err in denying Leone's motion to suppress these statements. We find no merit in Leone's argument that the police "created their own artificial exigency by their threats." At the time the questions were asked of Leone, Officers Mailhot and Chamberlain had heard a number of gunshots and knew Payne had been hit. They also knew that Leone had been armed and that they were in a relatively isolated, densely wooded area with very limited visibility.

█ In addition, the State must prove beyond a reasonable doubt that Leone's statements were voluntary, i.e., were " 'the result of the defendant's exercise of his own free will and rational intellect.' " *Barczak*, 562 A.2d at 144 (quoting *State v. Franklin*, 463 A.2d 749, 752 (Me.1983)). In making its determination, the trial court must consider the totality of the circumstances. *Barczak*, 562 A.2d at 144. Though Leone would compress into a few minutes the time within which all his statements were made, the record discloses that they were made over a period of approximately ten to fifteen minutes. Unlike the circumstances surrounding the making of the statements suppressed by the court, no guns were drawn and no physical force was applied to Leone at the time he made the other statements. From Leone's unsolicited statement that another person had shot Officer Payne; that the police should talk to Leone's lawyer to learn that person's identity; and that a police officer could "go ahead and pull the trigger if [he was] man enough," the trial court could infer that Leone was exercising his rational intellect and free will. The court also heard evidence from medical personnel that Leone was awake, alert and oriented and

gave lucid answers to their questions. On this record we cannot say that the trial court's finding that the statements in issue were voluntary was clearly erroneous.

## II.

Leone next contends that the trial court erred in holding that Leone's statement to his wife was not a privileged communication within the purview of M.R.Evid. 504 and was admissible in evidence. Leone argues that the admission of this statement violated his right to due process and was fundamentally unfair. We disagree.

We review rulings on the admissibility of evidence for abuse of discretion only. *State v. Nye*, 516 A.2d 560, 562 (Me.1986). We have previously stated that the marital privilege "is based upon the necessity of preserving the confidence which must exist in order to create and maintain mutual happy relations..." and does not apply to couples who are separated with "the one making the communication [being] actively hostile to the other, and ... known to be so." *Holyoke v. Estate of Holyoke*, 110 Me. 469, 474, 87 A. 40 (1913). Further, the privilege can be invoked only when the communication was made while acting "in reliance upon an *expectancy, reasonable* under all the circumstances" that the communication "will be transmitted *only* to the spouse and *to no other person....*" *State v. Benner*, 284 A.2d 91, 109 (Me.1971) (emphasis in original). In *Benner*, we held that the presence of a sleeping child in the camper where the communication was made vitiated the privilege.

In the present case, the Leones had been married only six months and had been living apart for the last month of that period. Based upon the allegations that Leone had choked her and threatened to kill her, Leone's wife had sought and received a protection from abuse order prohibiting Leone from entering their residence. At the time his wife asked Leone, "Why did you do it?" and he responded, "Because, I don't care anymore," Leone was in a hospital emergency room with a number of medical personnel present. A police officer at the foot of the stretcher on which Leone was lying heard part of the conversation between Leone and his wife but did not hear the statement of Leone here in issue. Applying the principles set forth in *Benner* and *Holyoke* to these facts, we hold the trial court properly rejected Leone's claim of marital privilege and admitted Leone's statement to his wife.

## III.

Leone further contends that the trial court committed reversible error by excluding two statements he made to emergency medical technicians during his initial medical treatment at the scene: "I got shot ducking trying to get away" and "don't know why they shot me. I didn't do it." Leone sought admission of these hearsay statements under two exceptions to the hearsay rule, the "excited utterance" exception (M.R.Evid. 803(2)), and the "statements for the purpose of medical diagnosis and treatment" exception (M.R.Evid. 803(4)).[2]

M.R.Evid. 803(2) defines an excited utterance as "[a] statement relating to a startling event or conditions made while the declarant was under the stress of excitement caused by the event or condition." As we have previously stated, such an utterance is a product of shock or nervous excitement of the moment, must be unreflective and spontaneous and "must have been before there has been time to contrive

2. M.R.Evid. 803(2), (4) provide:
The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

....

**(2) Excited Utterance.** A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

....

**(4) Statements for Purposes of Medical Diagnosis or Treatment.** Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

and misrepresent." *State v. Ellis*, 297 A.2d 91, 93–94 (Me.1972). The record in the present case indicates that many minutes passed between the initial excitement of the shooting and Leone's treatment by paramedics. Leone argues that "[t]he sequence of Leone's first entrance into the woods and his removal by stretcher was a continuum" during which he experienced the same level of excitement and corresponding lack of reflection. The record, however, demonstrates abundant reflective power. Leone changed his initial story from the statement that he was alone to one where there was a possible accomplice, and he possessed sufficient control to respond to police questioning by saying, "[Y]ou'll have to get [the name of the accomplice] from my lawyer." Based upon this record, we cannot say that the trial court abused its discretion in refusing admission of these statements as exceptions to M.R.Evid. 803(2).

 Nor did the trial court err in finding that Leone's statements were not made for purposes of medical diagnosis and treatment. It is well established that M.R. Evid. 803(4) is only sufficiently broad to cover the *cause* of Leone's injury (a gunshot), but not statements of *fault* or *blame* (i.e., that Leone did not initiate the shoot-out in the woods). *See State v. True*, 438 A.2d 460, 466–67 (Me.1981); M.R.Evid. 803(4) advisers' note.

### IV.

 Leone next contends that the jury verdicts finding him guilty of the attempted murders of Officers Mailhot and Chamberlain were not supported by the evidence. Leone asserts that he did not perform the "substantial step" that is the key element of attempt. He concedes, however, that in response to Officer Chamberlain's demand that he throw out his gun, he held the .44 revolver in a position to fire while tossing away a vial of cocaine. Leone argues that his conduct was "mere preparation." He maintains that he would have to aim and fire the weapon for an attempt to occur and that the lowering of the weapon and pulling the trigger would be "strongly cor-

roborative" of an attempt to commit murder. We find no merit in his contention.

On claims of insufficiency of evidence to support a verdict, we examine whether, based on the evidence viewed in the light most favorable to the prosecution, the trier of fact could find beyond a reasonable doubt every element of the offense charged. *State v. Barry*, 495 A.2d 825, 826 (Me.1985).

17-A M.R.S.A. § 152(1) (1983) defines attempt as follows:

> A person is guilty of criminal attempt if, acting with the kind of culpability required for the commission of the crime, and with the intent to complete the commission of the crime, he engages in conduct which, in fact, constitutes a substantial step toward its commission. *A substantial step is any conduct which goes beyond mere preparation and is strongly corroborative of the firmness of the actor's intent to complete the commission of the crime.*

(Emphasis added.) Whether an action is merely preparatory or is the substantial step that transcends preparation is a matter of context. The jury heard evidence from which they could reasonably find that (1) Leone had fired the .44 revolver in his possession four times before Chamberlain and Mailhot had attempted to locate his whereabouts; (2) prior to his capture, Leone had stolen a car and a gun; (3) he had taken cocaine; (4) he ran into the woods to avoid capture; (5) he repeatedly called out to the officers his desire to surrender; (6) in response to Chamberlain's command he tossed out the vial of cocaine and extended his open hand while holding the cocked revolver in a position to be fired; and (7) he stated to his wife at the hospital that he no longer cared about his conduct. Based on this evidence and the reasonable inferences to be drawn from it, the jury rationally could find Leone guilty of the attempted murders of Officers Mailhot and Chamberlain.

### V.

 Finally, Leone contends that the trial court abused its discretion in exclud-

ing evidence of Officer Payne's aggressive behavior while on the police force, while at the same time admitting evidence as to Leone's probationary status and recent criminal activity. Leone argues that the rulings, taken together, created an asymmetrical treatment of the defendant and the State on the crucial issue of whether Leone acted in self-defense, and deprived him of his constitutional right to due process. We review the rulings, made after a hearing on motions *in limine,* for an abuse of discretion. *State v. Heald,* 393 A.2d 537, 542 (Me.1978).

The trial court acted within its discretion in admitting pursuant to M.R.Evid. 404(b) [3] evidence as to Leone's failure to report to his probation officer and of other recent criminal activity on his part. The evidence was admitted for the limited purpose of showing that Leone had a strong motive to avoid apprehension by law enforcement authorities, highly relevant to the circumstances of this case. The advisers' note to Rule 404 makes clear that such evidence is admissible

> when offered for another purpose, such as proof of *motive,* opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

(Emphasis added.) *See State v. Wallace,* 431 A.2d 613, 615–16 (Me.1981) (evidence of other crimes admissible if relevant to motive, intent, etc.). Moreover, the jury was carefully instructed that such evidence was admitted for a limited purpose, and that it was not to be considered as tending to show Leone's bad character.

Nor was there any error in the exclusion of evidence, of which Leone was unaware at the time of the incident,[4] concerning the use of excessive force by Officer Payne on prior occasions. That rule was in conformity with the clear language of M.R.Evid. 404(a), which provides in pertinent part that

---

**3.** M.R.Evid. 404(b) provides as follows:
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith.

> [e]vidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion. . . .

*See State v. Mitchell,* 390 A.2d 495, 501 (Me.1978) (evidence of violent nature of victim, unknown to defendant, held "clearly inadmissible" under Rule 404). In previously rejecting a defendant's contention that the exclusion of evidence of the victim's character violated his constitutional right to due process, we said:

> This rationally devised rule of evidence, designed to avoid diverting the jury's attention from the real issues, is not fundamentally unfair and, therefore, does not constitute a violation of due process.

*State v. Lagasse,* 410 A.2d 537, 542 (Me. 1980).

We reject Leone's contention that for reasons of constitutional due process evidence admitted for the limited purpose of showing Leone's motive to avoid capture must be equated with evidence showing the bad character of his victim. The trial court's correct application of the rules of evidence did not result in denial of process due Leone.

The entry is:

· Judgments affirmed.

McKUSICK, C.J., and WATHEN and COLLINS, JJ., concurring.

GLASSMAN, Justice, dissenting.

I agree with Parts I, II, III and IV of the court's opinion but, because I disagree with Part V, I respectfully dissent.

In the circumstances of this case, I believe the trial court erred in refusing to allow Leone to introduce evidence of other acts of Officer Payne that were highly probative of Officer Payne's "motive, opportunity, intent, preparation [or] plan" in his pursuit of Leone in the woods on July 23, 1988. *See* M.R.Evid. 404 advisers' note.

---

**4.** A victim's reputation for violence, if known to the defendant, is admissible on the issue of self-defense for the purpose of showing reasonable apprehension of danger. M.R.Evid. 404 advisers' note.

It is clear from the record that the trial court, as does this court, failed to address the argument of Leone that he did not seek to introduce this evidence to establish Payne's character in order to show that Payne had acted in conformity therewith.[1] The evidence was offered as being highly relevant to the real issues before the jury of whether, as contended by Leone, Payne was the aggressor using unjustified deadly force and whether Leone had acted in self-defense.

It is undisputed that at the time Payne and the other officers pursued Leone into the woods they knew nothing about Leone other than that he was an individual leaving the scene of what could appear to be an automobile accident—conduct that reasonably could have led the officers to believe that such an individual could be a misdemeanant; Leone had no previous knowledge of Payne; the only shots fired were from the guns in the possession of Officer Payne and Leone; each of the guns had cylinders accommodating six bullets; there was one bullet left in Leone's gun[2] and none in Payne's; the other officers had heard six to ten gunshots; neither Payne nor Leone was visible to anyone else at the time the shots were fired; a bullet fired from Payne's gun entered Leone's left buttock and two bullets fired from Leone's gun had entered Payne's chest.

The State and Leone each filed a motion in limine seeking the trial court's approval to admit certain evidence each had discovered after July 23. The State's motion, *inter alia,* addressed evidence that on July 13, 1988 Leone had been released on bail for an alleged probation violation and that sometime between July 19 and July 23, 1988 Leone had allegedly stolen a .44 revolver and a motor vehicle. Leone's motion, *inter alia,* addressed evidence of Payne's alleged use, prior to July 23, of violence and excessive force against fleeing misdemeanants. At a hearing on the motions, each party urged approval of that

party's motion on the ground that the proposed evidence was not being offered to show the character of the named individual or that he had acted in conformity therewith on the particular occasion in issue, but for the limited purpose of showing that individual's motive and state of mind on that occasion. The trial court granted the motion of the State. Although Leone did not base his argument on any enumerated rule, the trial court denied Leone's motion

> on the grounds that there is no evidence or there's been no suggestion made that the defendant was aware of this type of characterization ... of the victim. In other words, the defendant was not aware ... of the specific incidences of aggressiveness and aggressive behavior on the part of the victim, and the law in Maine is quite clear under these circumstances that [the] evidence must be excluded under [M.R.Evid.] 404(a).

The trial court's ruling would have been proper had Leone's defense rested on a claim that his after-acquired knowledge of Payne's reputation for violence was justification in the circumstances of July 23 for Leone to have fired the first shot in self-defense. *See* M.R.Evid. 404(a) advisers' note. Such is not the case here. Leone's claim of self-defense was not that he had fired at Payne because of what Leone, based on Payne's reputation for violence, thought Payne was going to do in the circumstances, but rather that Leone had only fired his gun after Payne had fired at Leone several times and had wounded Leone in the left buttock. Leone's claim of self-defense was founded on what he claimed Payne did, not what Leone thought Payne would do. The issue before the fact finder was one of an objective occurrence, not of a subjective belief of Leone. Accordingly, the element that Leone have prior knowledge of the violent and overly aggressive acts of Payne in like circumstances was unnecessary. 1A J. Wigmore, *Evidence* § 63 (P. Tillers rev. ed. 1983); *see also* McCormick, *Handbook of the Law of*

---

1. *See* Fed.R.Evid. 404 (accused in homicide case claiming self-defense can offer evidence of character of victim to establish victim was aggressor).

2. There was evidence before the jury that prior to the incident at issue Leone had accidentally discharged a bullet from his gun into his leg.

*Evidence* § 193 (E. Cleary 2d ed. 1984). M.R.Evid. 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." While the rule itself does not speak to such limited admissions, the advisers' note makes clear that the rule "does not exclude the evidence when offered for another purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *See, e.g., State v. McLaughlin,* 567 A.2d 82, 83 (Me.1989); *State v. Brown,* 552 A.2d 12, 14 (Me.1988); *State v. Whiting,* 538 A.2d 300, 301–02 (Me.1988). There is nothing in the rule or in the advisers' note that limits "other crimes, wrongs, or acts" to those committed by the accused in a criminal case.

The evidence of Payne's prior acts sought to be introduced by Leone were highly probative of Payne's intent, motive or plan relative to his pursuit of Leone, which in turn was highly probative of Leone's claim that he was justified in using deadly force because he reasonably believed such force was necessary to defend himself from the deadly force being used against him.[3] *See* 17–A M.R.S.A. § 107(4)(B)(1) (1983 & Supp.1989) (circumstances where private person justified in using deadly force). *See also People v. Lynch,* 104 Ill.2d 194, 83 Ill.Dec. 598, 470 N.E.2d 1018 (1984); *Byrd v. State,* 626 P.2d 1057 (Alaska 1980) (other acts of victim admitted to establish victim was aggressor in homicide case where accused claims self-defense). It was for the jury to determine the credibility of and the weight

to be given this evidence in deciding whether Leone was guilty of murder or manslaughter or not guilty because he acted in self-defense. *See State v. Anaya,* 438 A.2d 892, 894 (Me.1981). As in the case of the evidence proffered by the State and admitted by the trial court, any risk that the jury may have been unduly diverted or confused by such evidence could have been offset by an instruction by the court limiting the jury's consideration of that evidence. *State v. Wyman,* 270 A.2d 460, 462 (Me. 1970). The trial court abused its discretion when it erroneously excluded the proposed evidence. In my opinion it cannot be said that it is highly probable that this error did not affect the jury's verdict. *State v. True,* 438 A.2d 460, 467 (Me.1981). Accordingly, I would vacate the judgment of manslaughter and remand that count of the indictment to the Superior Court for further proceedings.

---

**3.** Unlike the prior acts sought to be introduced in *State v. Lagasse,* 410 A.2d 537 (Me.1980), the prior acts of Officer Payne have great probative value on the issue of his state of mind at the time he decided to undertake his lone pursuit of Leone. In *Lagasse,* the victim's prior acts all involved alleged assaults against his ex-wife over a ten-year period and undertaken while the victim was intoxicated. This evidence had slight probative value when offered to show that the victim was the first aggressor during a confrontation with a stranger who was apparently assaulting a woman on a public street. In the present case, the prior acts of Officer Payne would tend to prove his motive, given the fact

that his prior acts specifically involve his reaction to fleeing misdemeanants. Although this would require the jury to infer Payne's actions from his motives, such an inference is generally accepted, when offered by the prosecution, as a valid exception to Rule 404. Rather than divert the jury's attention from "what actually occurred," M.R.Evid. 404 advisers' note, the conduct of the victim is the focus of any claim of self-defense. The underlying policy of Rule 404 does not apply here because there is no danger of unfair prejudice to the defendant in admission of this evidence. Its probative value substantially outweighs any danger of prejudice.