**STATE of Maine**

v.

**William LEWIS.**

Supreme Judicial Court of Maine.

Argued Nov. 2, 1990.
Decided Dec. 20, 1990.

David W. Crook, Dist. Atty. and William Baghdoyan (orally), Asst. Dist. Atty., Skowhegan, for the State.

Seth Berner (orally), Portland, for defendant.

Before ROBERTS, GLASSMAN, CLIFFORD, COLLINS and BRODY, JJ.

CLIFFORD, Justice.

William Lewis appeals from judgments of conviction entered by the Superior Court (Somerset County, *Chandler, J.*) on charges of attempted murder, 17–A M.R.S.A. §§ 152, 201 (1983), and aggravated assault, 17–A M.R.S.A. § 208(1)(B) (1983). On appeal, Lewis challenges the trial court's finding that he was competent to stand trial. Lewis also contends that the trial court erred in (1) denying his motion to dismiss the charges against him because of lost evidence; (2) excluding from trial evidence of drugs present in his body; and (3) refusing to submit the issue of involuntary intoxication to the jury. We affirm the convictions.

On July 28, 1987, Lewis was arrested outside his home in Madison and charged with shooting his wife, Georgie Carrigan Lewis, in the chest with a .32 calibre hand gun. After he was advised of his rights, Lewis gave a tape-recorded statement to the police in which he confessed to the shooting. Prior to trial, the Superior Court ordered that Lewis be examined to determine his competency to stand trial pursuant to 15 M.R.S.A. § 101–B(1) (Supp.1990).[1]

---

**1.** 15 M.R.S.A. § 101–B(1) provides in relevant part:

**Mental examination and observation of persons accused of crime**

Psychiatric reports were prepared by a state psychiatrist and by a clinical psychologist retained by Lewis's court-appointed counsel. Both doctors agreed that Lewis suffered from a delusional disorder in which he believed that his wife and others, including his brother-in-law and employees at the Somerset County Jail and the Department of Mental Health and Mental Retardation, were engaged in a conspiracy to poison him. Lewis's psychologist gave his opinion that the delusional disorder rendered Lewis incompetent to stand trial; the State's psychiatrist gave his opinion that Lewis was competent. After an evidentiary hearing, the Superior Court (*Chandler, J.*) found Lewis incompetent to stand trial.

Six months later, after a second evidentiary hearing before the same justice on Lewis's competency, the Superior Court once again concluded that Lewis was incompetent to stand trial but declined Lewis's attorney's request for a finding pursuant to section 101–B(4) that he would not be competent to stand trial in the foreseeable future. A third competency hearing was held before a different Superior Court justice (*Alexander, J.*) three months later. Although the testimony as to Lewis's condition was not significantly different, the court found that Lewis was competent to

stand trial and ordered that the case be returned to the trial calendar.

▬▬▬ In order to find Lewis competent to stand trial, the Superior Court is required to find that Lewis is capable of understanding the nature and object of the charges against him, comprehending his own condition in reference thereto, and cooperating with counsel to conduct a defense in a rational and reasonable manner. *State v. Hewett,* 538 A.2d 268, 269 (Me. 1988). After a finding of incompetence the court is required to continue the case until the defendant is deemed by the court, through periodic review, to be competent to stand trial or until the court enters a finding that the defendant will not be competent to stand trial in the foreseeable future. 15 M.R.S.A. § 101–B (Supp.1990).[2] Pursuant to the statute, periodic review of a defendant's competence to stand trial is *de novo* and is accomplished through an evidentiary hearing. *Id.* Neither the statute nor its history supports Lewis's contention that there is a requirement that the court find evidence of changed circumstances before it may conclude that a previously declared incompetent defendant is, in fact, competent to stand trial, or that the Superior Court is bound by its prior determination of incompetency. On appeal, this court will reverse the trial court's factual determina-

---

1. **Court order; permissive.** The District Court or the Superior Court having jurisdiction in any criminal case for cause shown may order the defendant examined to determine the defendant's mental condition with reference to the issues of competency, criminal responsibility, abnormal condition of mind and any other issue involving the mental or emotional condition of the defendant.

2. 15 M.R.S.A. § 101–B(4) provides in pertinent part:

   **4. Finding of incompetence, custody; bail.** If after hearing upon motion of the attorney for the defendant, or upon the court's own motion, the court finds that any defendant is incompetent to stand trial, it shall continue the case until such time as the defendant is deemed by the court to be competent to stand trial ... At the end of 30 days or sooner, and again in the event of recommitment, at the end of 60 days and one year, the State Forensic Service shall forward a report to the Commissioner of Mental Health and Mental Retardation relative to the defendant's competence

   to stand trial and its reasons therefor. The commissioner shall without delay file the report with the court having jurisdiction of the case. The court shall without delay set a date for and hold a hearing on the question of the defendant's competence to stand trial and shall receive all relevant testimony bearing on the question. If the court determines that the defendant is not competent to stand trial, but there does exist a substantial probability that the defendant will be competent to stand trial in the foreseeable future, it shall recommit the defendant to the custody of the Commissioner of Mental Health and Mental Retardation to be placed in an appropriate institution for the mentally ill or the mentally retarded for observation, care and treatment. If the court determines that the defendant is not competent to stand trial and there does not exist a substantial probability that the defendant can be competent in the foreseeable future, the court shall dismiss all charges against the defendant and notify the appropriate authorities who may institute civil commitment procedures for the individual....

tion of competency only upon a showing of clear error. *State v. Perkins*, 518 A.2d 715, 716 (Me.1986).

■ The Superior Court's primary concerns were with Lewis's ability to cooperate with his attorney and his ability to conduct his defense in a rational manner given that Lewis was extremely persistent in his desire to prove that he, rather than his wife, was the true victim. Although there were findings made at the first and second competency hearings that Lewis was unable to cooperate with his attorney and present a meaningful defense, a contrary finding at either hearing would have been equally supported by the evidence. After a third review of subsequent, albeit not significantly different evidence, the court found Lewis able to cooperate with an attorney and conduct his defense in a rational manner. That finding is not clearly erroneous.

■ Moreover, at the critical time of Lewis's trial, there was no indication of incompetence. Defense counsel did not raise the issue after the third competency hearing or at the time of trial which was eight months later. *See Thursby v. State*, 223 A.2d 61, 68 (Me.1966). Nor did the court make any inquiries concerning competency despite observing Lewis during the entire trial. We "assume from the presumption of regularity which attaches to final judgments of convictions ... that if the trial court had entertained any doubt as to [Lewis's] competence to stand trial it would have used its inherent power to probe into his mental condition for purposes of triability." *Id.* at 69 (citations omitted).[3]

■ Lewis further contends that the court erred in refusing to dismiss the indictment against him because the loss of a cassette tape by the police violated his right to a fair trial guaranteed by the due process clause of the fourteenth amendment. The tape, Lewis alleged, contained recordings of telephone conversations in which Georgie Lewis, the victim, admitted poisoning Lewis. After a hearing at which three officers who listened to the tape at the scene of the crime testified, the court (*Brennan, J.*) found that the tape did not contain the claimed exculpatory evidence and refused to dismiss the indictment.

A failure by the State to preserve evidence does not violate a criminal defendant's right to a fair trial unless the evidence possesses an exculpatory value that was apparent before the evidence was destroyed, the defendant would be unable to obtain evidence of comparable value by other reasonably available means, and the police acted in bad faith in failing to preserve the potentially useful evidence. *State v. Berkley*, 567 A.2d 915, 917–18 (Me.1989). The finding of the court that the tape did not contain exculpatory evidence will not be disturbed on appeal unless clearly erroneous. *See State v. Barczak*, 562 A.2d 140, 144 (Me.1989). The three officers who listened to the tape, and who the court found to be credible witnesses, testified that there was only one conversation on the tape in which the victim discussed Lewis's belief that the victim was poisoning him, but did not admit to poisoning Lewis. The officers' testimony was sufficient to support the court's finding that the cassette tape did not contain exculpatory evidence. In addition to his failure to prove that the tape had exculpatory value, Lewis also failed to allege or prove that the police acted in bad faith in failing to preserve the tape. Lewis therefore failed to demonstrate that the loss of the tape violated his due process right to a fair trial, and the court properly denied his motion to dismiss, the only sanction requested.

■ Lewis also challenges the court's refusal to allow him to present the expert testimony of a doctor that a drug "consistent with morphine" was found in his system four days after he was arrested. The court excluded the expert testimony because the expert was unwilling to express an opinion as to how the presence of the

---

**3.** Lewis steadfastly refused to allow his attorneys to pursue an insanity defense. *See* 17-A M.R.S.A. § 39 (Supp.1990).

drug in Lewis's system might have influenced Lewis's behavior on the day of the shooting. The trial court's decision whether to admit expert testimony shall not be reversed in the absence of a clear abuse of discretion or error of law. *State v. Tibbetts*, 572 A.2d 142, 143 (Me.1990).

M.R.Evid. 702 provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert ... may testify thereto in the form of an opinion or otherwise." The possible effect upon a person of morphine or a drug consistent with morphine is not within the common knowledge of the jury. Because it was reasonable for the court to conclude that expert testimony as to the presence of the drug in Lewis's system would not assist the jury in the absence of expert testimony as to how that drug might have affected Lewis, the court did not abuse its discretion in excluding the expert testimony.

 For the same reason the court's refusal to instruct the jury on involuntary intoxication was within its discretion. *See* 17–A M.R.S.A. § 37 (1983).[4] The standard for determining whether there should be an instruction on this issue is whether there was sufficient evidence of involuntary intoxication generated during the trial to justify the existence of a reasonable doubt as to whether Lewis possessed the required intentional or knowing state of mind. *State v. Rice*, 379 A.2d 140, 147 n. 7 (Me. 1977). It is the defendant's burden to generate the evidence. *Id.* at 147. Although Lewis testified that he believed he had been drugged or poisoned, there was no evidence to link the drugs or poison to an intoxicating condition, or to determine how the alleged drugs might have affected his state of mind. Lewis did not meet his burden of generating sufficient evidence on the issue of intoxication.

The entry is:

Judgments affirmed.

All concurring.

---

**4.** 17–A M.R.S.A. § 37 (1983) provides in pertinent part:

**1.** Except as provided in subsection 2, evidence of intoxication may raise a reasonable doubt as to the existence of a required culpable state of mind.

**2.** When recklessness establishes an element of the offense, if the actor, due to self-induced intoxication, is unaware of a risk of which he would have been aware had he not been intoxicated, such unawareness is immaterial.

**3.** As used in this section:

**A.** "Intoxication" means a disturbance of mental capacities resulting from the introduction of alcohol, drugs or similar substances into the body....