2008 ME 154

**STATE of Maine**

v.

**Daniel P. WARREN.**

Supreme Judicial Court of Maine.

Submitted on Briefs: June 30, 2008.
Decided: Oct. 7, 2008.

Neale T. Adams, District Attorney, Todd R. Collins, Asst. Dist. Atty., Caribou, ME, for the State of Maine.

Norman G. Trask, Esq., Currier & Trask, P.A., Presque Isle, ME, for Daniel P. Warren.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, SILVER, MEAD, and GORMAN, JJ.

GORMAN, J.

[¶ 1] The State appeals an order of the Superior Court (Aroostook County, *Hunter, J.*) granting Daniel P. Warren's motion to suppress evidence. Warren was charged with one count of criminal OUI (Class D), 29–A M.R.S. § 2411(1–A)(C)(1) (2007). The State argues that the court erred in: (1) suppressing evidence that Warren did not challenge at the time of the hearing; (2) finding that Warren did not voluntarily respond to an officer's questions; (3) determining that an officer must have probable cause of an operating under the influence (OUI) offense, rather than a reasonable suspicion based on articulable facts, to require a field sobriety test; and (4) determining that a refusal to take a breath test is protected by the *Miranda*

doctrine. We vacate the Superior Court's order.

[¶ 2] This case arises out of an arrest made by Officer Larry Fickett of the Presque Isle Police Department. While on patrol early in the morning, Fickett noticed a Mustang that appeared to be illegally parked. When he drove by the area again about ten minutes later, he noticed that the Mustang was gone. During his third patrol of the area another five minutes later, he noted that the Mustang had returned, that it appeared to be unoccupied, but that its brake lights were on. When he approached the car, Fickett saw an individual slumped down in the driver's seat. Fickett tapped the window to get the individual's attention. As the individual opened the door, Fickett noticed that the individual did not appear to be twenty-one, and that there was an overwhelming smell of alcohol coming from the car. The individual soon identified himself as Daniel Warren.

[¶ 3] The officer began questioning Warren, first asking him whether the Mustang had been under his control for at least the past hour, to which Warren responded that it had. When further questioned, Warren also responded that no one else had driven the Mustang that evening. The officer told Warren he smelled alcohol and asked him if he had been drinking; Warren said that he had not been drinking. The officer then asked Warren to get out of the car and perform field sobriety tests, which Warren failed. Warren was arrested for OUI, and later refused to submit to a breathalyzer test.

[¶ 4] Warren was charged with one count of criminal OUI (Class D), 29–A M.R.S. § 2411(1–A)(C)(1); he pleaded not guilty and filed a motion to suppress all evidence gathered as a result of the officer's investigation of the stopped vehicle. In his motion, Warren cited the Fourth and Fifth Amendments to the United States Constitution, and similar provisions of the Maine Constitution, claiming that he had been subjected to unreasonable search and seizure and that his right to avoid self-incrimination had been violated. At the hearing held on Warren's motion, however, Warren's attorney limited the scope of his challenge. He stated that, because Fickett had no reason to go to Warren's vehicle and question him, the stop was neither appropriate nor legal.[1] Based on this statement, the State limited its presentation to the events leading up to Warren's arrest.

[¶ 5] The court granted Warren's motion, not based upon a determination that the stop was illegal, but based on a determination that Warren was seized at the moment the officer requested a field sobriety test. It held that Warren's performance on the field sobriety test should be suppressed because the officer did not then have probable cause to believe Warren had committed any crime. The court also suppressed Warren's statements at the police station, including his refusal to take a breath test, finding that he was not given proper warnings. Finally, the court

---

1. Warren's counsel described the events of the evening during Fickett's patrol and then went on to say:

    The officer saw brake lights on, approached the vehicle and tapped on the window, asked Mr. Warren a series of questions at that point. Our contention here is simply that there's no showing of—f operation. The keys were not in the ignition. Mr.

    Warren didn't have the keys on his person, as far as we know. The car wasn't running. The officer didn't see the car going anywhere. The officer observed a person inside a car, and we think, based on that fact alone—really it's all we have here—that the subsequent questioning of Mr. Warren was not appropriate and [was] illegal.

concluded that Warren's statements at the scene should be suppressed because the State did not prove beyond a reasonable doubt that Warren's self-incriminating statements were made voluntarily.

[¶ 6] The State sought and received approval of the Attorney General, pursuant to 15 M.R.S. § 2115-A (2007), to appeal the court's pretrial order.

[¶ 7] As was mentioned above, at the hearing on his motion to suppress, Warren did not challenge the voluntariness of his statements, the admissibility of his refusal to submit to the breath test, or the legality of the field sobriety test. He argued only that the officer's contact with him implicates the Fourth Amendment, and asserted that because there was no evidence of operation at the time that contact was made, the contact was illegal. The trial court needed to address the legality of the initial investigatory stop in ruling on the motion. It did not do so. We vacate the court's judgment because the stop was constitutionally permissible. Because the essential facts underlying the suppression issue are not in dispute, and because Warren presented only a limited challenge to admissibility of the evidence at hearing, there is no necessity for further fact-finding, and we remand with instructions to deny the motion to suppress and proceed to trial or other resolution as appropriate.

## I. DISCUSSION

■ [¶ 8] The facts establish, without dispute, that the officer noticed an illegally parked vehicle that apparently left and then returned to the same location. Upon its return, the vehicle appeared to be unoccupied but its brake lights were on. When the officer approached the vehicle, he saw a person slumped down in the driver's seat. At that point, the officer had specific articulable facts to warrant an investigatory stop based on reasonable (1) suspicion to believe that a law may have been violated, *State v. Webber*, 2000 ME 168, ¶ 7, 759 A.2d 724, 726–27; and (2) concern for the health and safety of the individual observed slumped in the driver's seat, *State v. Gulick*, 2000 ME 170, ¶¶ 13–14, 759 A.2d 1085, 1088.

■ [¶ 9] As soon as the occupant lowered the car window, the officer smelled a strong odor of alcohol coming from the car and observed that the occupant appeared to be younger than twenty-one, the legal age for consuming alcoholic beverages. Based on these observations, and on the officer's knowledge that the vehicle had recently been operated, the officer properly inquired about the occupant's identity and the identity of the operator. That inquiry disclosed that Warren had been driving the vehicle at the time it had left and returned to the spot where it was observed. Inquiring whether an individual observed in a stopped vehicle has been driving is specifically contemplated and approved by the statutes governing enforcement of the operating under the influence laws.[2] *See* 29-A M.R.S.

---

**2.** The officer's question to Warren as to whether he had been the operator of the vehicle was an appropriate follow-up in light of Warren's observed condition, whether or not the officer had also smelled the strong odor of alcohol emanating from the vehicle. *State v. Gulick*, 2000 ME 170, ¶ 20, 759 A.2d 1085, 1090 (an officer's further questions reasonably related to the circumstances justifying the original contact are appropriate). This inquiry was part of general questioning by which the officer could determine if a further violation of the law may have been implicated. *United States v. Brignoni–Ponce*, 422 U.S. 873, 881–82, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975) (an officer may question the driver or passengers of a vehicle about potential illegal activity or ask them about suspicious circumstances, but any detention or search beyond

§ 2431(4) (2007).[3] In addition, the officer in this case was inquiring about the operator's condition to determine if the officer needed to take further action to protect the health and safety of both the operator and the general public. Part of an officer's role as a public servant includes assisting those in distress and maintaining public safety. *State v. Pinkham*, 565 A.2d 318, 319 (Me.1989). An officer who does not inquire into the risk an operator poses to himself or others on the road may be regarded as careless. *State v. Webster*, 2000 ME 115, ¶ 8, 754 A.2d 976, 978.

[¶ 10] From this investigatory stop, the officer learned that Warren had been the sole operator of the vehicle, smelled a strong odor of alcoholic beverages, and heard Warren's assertion that he had not been drinking. The officer then had reasonable suspicion that Warren had been operating the vehicle under the influence and, consistent with recognized practices in these circumstances, asked Warren to get out of the vehicle and perform field sobriety tests. A driver's performance on field sobriety tests informs an officer's determination as to whether or not there may be probable cause to arrest for operating under the influence of intoxicants. *State v. Little*, 468 A.2d 615, 617 (Me.1983). The results of such tests do not need to be preceded by *Miranda* warnings to be admissible evidence at a later trial. *Webster*, 2000 ME 115, ¶ 10, 754 A.2d at 978.

[¶ 11] With these facts established without dispute, the officer's investigatory stop was justified by reasonable suspicion of a violation of the law and reasonable concern for health and safety.

[¶ 12] Beyond the issues presented, the trial court also addressed the voluntariness of Warren's statements, finding that voluntariness was not proved beyond a reasonable doubt. Assuming that this issue was preserved, although Warren did not raise it at the hearing, there is also no factual dispute regarding this issue. The only basis for challenging voluntariness is Warren's impairment. The fact that someone may be impaired as a result of consumption of alcohol or other illegal substances, however, does not render involuntary statements made while the person was impaired. *See State v. Barczak*, 562 A.2d 140, 145 (Me.1989); *State v. Finson*, 447 A.2d 788, 792 (Me.1982).

[¶ 13] The trial court in its order also raised the question of whether Warren's refusal to submit to a blood-alcohol test would be admissible. Again, Warren did not assert this issue at the hearing. At trial on a charge of operating under the influence, a defendant's refusal to submit to a blood-alcohol test is admissible if, prior to the refusal, the defendant was properly warned of the consequences of failure to submit to a blood-alcohol test.

---

this must be based on consent or probable cause).

3. Section 2431(4) states:
> **4. Statements by accused.** A statement by a person as to name or date of birth, or the name or date of birth contained on a driver's license surrendered by that person, is admissible in a proceeding under this Title.
> A statement of the person's name or date of birth constitutes sufficient proof by itself, without further proof of corpus delicti.

A statement by a defendant that the defendant was the operator of a motor vehicle is admissible in a proceeding under section 2411, section 2412–A, former section 2557, section 2557–A or section 2558, if it is made voluntarily and is otherwise admissible under the United States Constitution or the Constitution of Maine. The statement may constitute sufficient proof by itself, without further proof of corpus delicti, that the motor vehicle was operated by the defendant. 29–A M.R.S. § 2431(4) (2007).

29–A M.R.S. § 2431(3) (2007). Because the issue was not raised by the defense, the record is silent as to whether or not Warren was given proper warnings prior to his refusal to submit to a blood-alcohol test. Should the matter proceed to trial, that issue could be resolved by an appropriate motion in limine.

The entry is:

Order vacated. Case remanded for entry of an order denying the defendant's motion to suppress.