2000 ME 22

**STATE of Maine**

v.

**Albert STANLEY.**

Supreme Judicial Court of Maine.

Argued Oct. 5, 1999.
Decided Feb. 9, 2000.

Andrew Ketterer, Attorney General, Donald W. Macomber, Asst. Attorney General (orally), Lisa Pelkey Marchese, Asst. Attorney General, Augusta, for State.

Jeffrey C. Toothaker (orally), Toothaker & Chong, Ellsworth, for defendant.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

DANA, J.

[¶ 1] Albert Stanley appeals from the judgment entered in the Superior Court (Washington County, *Atwood, J.*) on a jury verdict finding him guilty of murder. *See* 17–A M.R.S.A § 201(1)(A) (1983).[1] Stanley contends that the court erroneously excluded (1) evidence of his knowledge of a prior act of violence by the victim which he had offered to support his argument that he reasonably believed that his life was in

---

1.  17–A M.R.S.A. § 201(1)(A) (1983) provides that a person is guilty of murder if "he inten-  tionally or knowingly causes the death of another human being."

danger and (2) evidence of the victim's reputation for violence while intoxicated that Stanley sought to introduce for the same purpose. We agree that Stanley should have been permitted to introduce his knowledge of a prior act of violence and, therefore, vacate the judgment.

## I. FACTS

### A. The Events that Led to the Shooting

[¶ 2] Stanley had gone to Mabel McVicar's home at approximately 5:00 p.m. on the night of November 8, 1996, and the couple consumed alcohol there for several hours before leaving to look for friends. They made several stops, including a trip to a store to purchase beer, before arriving at Stanley's home at approximately 12:30 a.m. Stanley and McVicar had argued earlier in the evening and discussed breaking up,[2] but they had settled down and were not arguing with each other at this point in the evening.

[¶ 3] For the next three hours Stanley and McVicar consumed beer and welcomed guests in Stanley's home. McVicar became involved in a heated argument with two of the guests that culminated in McVicar throwing them out. Stanley recollected that one of the guests remained for a short period of time and attempted to calm McVicar down but left because McVicar's anger appeared to be increasing.

[¶ 4] Stanley testified that after the guests left, McVicar directed her anger at him. He fueled the flames of her anger by telling her she should not have "pick[ed] on" their guests. According to Stanley, McVicar then began pushing and hitting him and said she "wanted to kill" him. Stanley asserted he shot McVicar because these events escalated to the point that he believed it was his only option to adequately protect himself.

### B. Stanley's State of Mind

[¶ 5] Stanley supported his belief that he was in danger by testifying that McVicar was a strong woman who was capable of overpowering him. He testified that although he and McVicar were of similar physical size, his ability to defend himself was diminished by a physical disability.[3] The court also allowed Stanley to testify about his personal knowledge of McVicar's reputation for violence when she consumed alcohol, and about specific acts of violence of which *he* had been the target. The parties also stipulated that McVicar's blood-alcohol level was .30 percent, nearly four times the legal limit for operating a motor vehicle.[4]

[¶ 6] Stanley also sought to testify to his knowledge that McVicar, while intoxicated, had stabbed an ex-boyfriend during an argument in 1991 and to have other members of the community testify as to McVicar's reputation for violent behavior while intoxicated to corroborate his own assertion to that effect. The court, however, excluded the 1991 stabbing incident because it found that testimony regarding a specific act of violence would be improper character evidence and excluded the testimony of other members of the community because it found the absence of a proper foundation.

## II. DISCUSSION

[¶ 7] A person may justify the use of deadly force when that person reasonably believes the other person is about to use unlawful, deadly force against him or another person. *See* 17–A M.R.S.A. § 108(2)(A)(1) (Supp.1994). In addition, it is an affirmative defense to a prosecution for murder that the actor "causes the death while under the influence of extreme

---

2. The State theorized that Stanley killed McVicar because he was angered by her desire to terminate their relationship. There was evidence, however, that the couple shared an off and on relationship and that it was quite common for them to break up and then reunite.

3. Stanley had suffered from polio as a child and had limited use of his legs.

4. In Maine, the legal limit for operating a motor vehicle is a blood-alcohol level of .08 percent. *See* 29–A M.R.S.A. § 2411.

anger or extreme fear brought about by adequate provocation." 17–A M.R.S.A. § 201(3) (1983). As each of these defenses relies heavily on the reasonableness of Stanley's state of mind, it was critical that Stanley be afforded the opportunity to present the facts, as he understood them to be, during his altercation with McVicar.

■ [¶ 8] Evidence of a person's character or of a person's bad acts is generally not admissible *to prove that that person acted in conformity therewith.* M.R. Evid. 404 (emphasis added). In applying Rule 404, we have stated that evidence of a victim's violent nature is "clearly inadmissible" to prove the victim was violent on a given occasion. *See State v. Mitchell,* 390 A.2d 495, 501 (Me.1978). Stanley, however, did not seek to admit evidence of McVicar's 1991 stabbing and her reputation for violence while intoxicated for that purpose. Rather, he sought to demonstrate that his knowledge of these facts caused him to have a reasonable apprehension of imminent danger. *See State v. Dutremble,* 392 A.2d 42, 46–47 (Me.1978) (error by trial court in excluding evidence of defendant's knowledge of murder victim's reputation for violence; ruled harmless in the circumstances). We review the trial court's exclusion of evidence for clear error or an

abuse of discretion. *State v. Shuman,* 622 A.2d 716, 718 (Me.1993).

**A. Evidence of the Prior Bad Act**

■ [¶ 9] We agree with the numerous jurisdictions that have admitted evidence of prior bad acts offered for the purpose of proving the defendant's state of mind and excluded such evidence when offered to demonstrate the victim's character.[5] A defendant's knowledge of prior acts of violence, whether witnessed by or recounted to the defendant, serves to establish that the defendant's mental judgments and physical responses during the encounter were reasonable. *See King v. United States,* 177 A.2d 912, 913 (D.C. 1962) (finding error in court's exclusion of evidence offered by the defendant that he "had heard" that the victim had been involved in two other fights with co-workers).[6]

[¶ 10] Stanley did not offer the evidence of the 1991 incident for the purpose of proving that McVicar acted in conformity with her violent nature or even to show that she had a violent nature. Rather, he offered the evidence for the purpose of demonstrating that his knowledge of that incident caused him to reasonably apprehend that his life was in danger during the

---

5. Numerous jurisdictions have determined that evidence of prior violent acts are admissible if the defendant was aware of the acts at the time of the event in question. *See Harris v. United States,* 618 A.2d 140, 143 (D.C.1992) (stating defendant may introduce prior acts of violence committed by the victim provided the defendant knew of them); *State v. Daniels,* 160 Wis.2d 85, 465 N.W.2d 633, 636 (1991) (stating defendant may support claim of self-defense by establishing what the defendant believed the victim's turbulent and violent character to be by proving "prior specific instances of violence within his knowledge at the time of the incident"); *State v. Tribble,* 428 A.2d 1079, 1085 (R.I.1981) (stating that "[e]vidence of specific acts of violence committed by the victim against third parties of which acts the defendant was aware would enlighten the jury on the defendant's state of mind at the time of the confrontation."); *see also Harris v. State,* 400 P.2d 64, 70 (Okla. Crim.App.Ct.1965) (stating the defendant is to

be given great latitude in the introduction of this form of testimony).

6. In *Jones v. State,* 13 Md.App. 677, 284 A.2d 635, 640 (1971), a Maryland court rationalized the admission of such evidence as follows:

> [c]ertainly ... analogies of the law (apart from the common sense of the situation) favor such evidence; for if particular vicious acts of an animal are relevant to show that its owner was warned of its viciousness, and if particular misconduct of an employee is relevant to show that his employer was warned of his incompetency, then particular deeds of unscrupulous violence may well be deemed relevant to show an apprehension of violence from such a person. The true solution is to exercise a discretion, and to admit such facts when common sense tells us they could legitimately affect a defendant's apprehensions.
> *Id.* at 640.

event in question. In *State v. Bennett*, 658 A.2d 1058, 1062 (Me.1995), we stated that the exclusion of such evidence is not erroneous "[u]nless the accused is aware of the victim's reputation *or past acts*." (Emphasis added.) Conversely, where the accused is aware of the victim's past acts, it is erroneous for the trial court to exclude the evidence. Field & Murray, *Maine Evidence* § 404.3 at 129 (2000 ed.).

[¶ 11] When offered to demonstrate the reasonableness of a defendant's apprehension of danger, evidence of prior violent acts is essentially proof of *the reasonableness of the defendant's belief* with respect to the violent character of the victim, and not evidence of the victim's character. *See* Field & Murray § 404.3 at 129. Thus, we conclude that it was error for the trial court to exclude the evidence of the 1991 stabbing.

[¶ 12] An error that is properly preserved for review, as is the case here, will result in a judgment being vacated unless the error is harmless. "An error is harmless if it is highly probable the error did not affect the judgment." *State v. Robbins*, 666 A.2d 85, 88 (Me.1995); *see also* M.R.Crim. P. 52(a). Stanley's state of mind was critical to his defense. His knowledge of the 1991 stabbing would have helped explain his apprehension of danger, and would have aided the jury in determining whether his apprehension was reasonable. Accordingly, we cannot say that it is highly probable that the absence of this evidence did not affect the jury's judgment.

B. Evidence of Reputation

[¶ 13] While evidence of a person's character is not admissible to prove that that person acted in conformity therewith, *see* M.R. Evid. 404, this rule "does not keep out the victim's reputation for violence, proved to have been known to the accused before the event, for the purpose of showing his reasonable apprehension of immediate danger," *id.* advisor's note; *see also State v. Leone*, 581 A.2d 394, 400 n. 4 (Me.1990); *Dutremble*, 392 A.2d at 46–47;

Field & Murray § 404.3 at 129. In the present case, Stanley did not seek to introduce evidence of McVicar's reputation to demonstrate that she was the first aggressor in the altercation. Rather, he sought to demonstrate that his awareness of her reputation caused him to apprehend that he was in imminent danger. Accordingly, Stanley was permitted to testify as to McVicar's reputation when she consumed alcohol.

[¶ 14] To buttress his credibility and the reasonableness of his testimony with respect to McVicar's reputation for violence while intoxicated, Stanley sought to introduce the testimony of other witnesses from the community with knowledge of this reputation. However, after a voir dire of three witnesses, the court concluded that the witnesses had not established a proper foundation for admitting their testimony. We review a trial court's determinations of foundational issues for an abuse of discretion. *See State v. Brown*, 592 A.2d 163, 165 (Me.1991); Field & Murray § 405.2 at 150.

[¶ 15] Our past decisions establish that evidence of a homicide victim's violent nature or reputation for violence or aggressive behavior is inadmissible to support a claim of self-defense, where the defendant was unaware of the evidence at the time of the incident. *See Leone*, 581 A.2d at 399–400; *Mitchell*, 390 A.2d at 501. Specifically, such evidence is not admissible to corroborate testimony by the defense regarding reputation of or acts by the victim. *See Leone*, 581 A.2d at 399–400. However, where the defense establishes awareness of the offered evidence at the time of the incident, it is admissible on the issue of self-defense to show reasonableness of the defendant's acts or apprehension of danger. *See id.* at 400 n. 4; *Dutremble*, 392 A.2d at 46–47.

[¶ 16] The record of the offer of proof contains significant testimonial evidence of discussions in the small community of Indian Township regarding McVicar's reputation for violence when she was intoxicated. The record also includes evidence of Stan-

ley's regular presence in the community and in groups where such discussions of McVicar's reputation occurred. The record is unclear, however, as to whether Stanley was present when McVicar's reputation was being discussed or was otherwise made aware of these discussions prior to November 8, 1996.

[¶ 17] Because the case is being remanded for other reasons, and the record on the issue is unclear, we need not resolve this issue at this time. On remand, however, consideration of the admissibility of this reputation evidence should be guided by the principles stated in this opinion.

The entry is:

Judgment vacated. Remanded to the Superior Court for further proceedings consistent with this opinion.