2012 ME 2

**STATE of Maine**

v.

**Rory HOLLAND.**

Supreme Judicial Court of Maine.

Argued: Dec. 13, 2011.
Decided: Jan. 12, 2012.

Clifford B. Strike, Esq., and Amanda J. Doherty, Esq. (orally), Strike, Goodwin & O'Brien, Portland, for appellant Rory Holland.

William J. Schneider, Attorney General, Donald W. Macomber, Asst. Atty. Gen. (orally), Augusta, for appellee State of Maine.

Panel: ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

ALEXANDER, J.

[¶1] Rory Holland appeals from a judgment of conviction and concurrent life sentences on two counts of intentional or knowing murder, 17–A M.R.S. § 201(1)(A) (2011), entered in the Superior Court (York County, *Cole J.*) following a jury trial.

[¶2] Holland argues on appeal that the court erred in (1) denying Holland's motion in limine seeking to admit evidence of the victims' characters that may not have been known to Holland; (2) allowing into evidence a 2002 book that contained the Maine Criminal Code; (3) determining that there was sufficient evidence to disprove Holland's claim of self-defense; (4) denying Holland's motion in limine to permit statements from a 2007 civil trial to be admitted into evidence to provide context for Holland's reaction to threats and violence; (5) allowing the State to reopen its case to present evidence regarding identification of Holland; (6) failing to declare a mistrial when the State asked a question regarding the timing of the victims' funerals; and (7) addressing the first and second steps of the sentencing analysis, 17–A M.R.S. § 1252–C(1), (2) (2011), when it sentenced Holland to two life sentences. We affirm the judgment and the sentences.

## I. CASE HISTORY

[¶3] Viewing the evidence in the light most favorable to the court's judgment, the jury rationally could have found the following facts beyond a reasonable doubt. *See State v. Taylor,* 2011 ME 111, ¶3, 32 A.3d 440.

[¶4] Holland shot Derek Greene and Gage Greene, brothers who were 21 and 19 years of age respectively, in the early morning of June 30, 2009. Holland and the victims lived within blocks of each other in a neighborhood in Biddeford.

[¶5] Approximately one month prior to the shooting, Holland had allegedly grabbed the older brother's genitals at Holland's house. In response, the older brother, with two of his friends, assaulted Holland. Subsequently, the older brother was arrested and, as a condition of his bail, prohibited from having contact with Holland. After the assault, Holland was seen on numerous occasions walking past the older brother's home patting his side, suggesting to observers that he was armed.

[¶6] On the night of June 29, 2009, the younger brother hosted a party at his apartment with his older brother and approximately ten friends present. At approximately 10:30 p.m., the younger brother and a friend walked to another in-

dividual's home to collect money that individual owed to the younger brother. To get to this individual's home, about a ten-minute walk, the younger brother and his friend walked by Holland's home, but they did not see Holland. Because the individual did not have the money, but indicated that he might have it later that night, the younger brother and his friend returned to the party.

[¶ 7] A few hours later, the older brother and the younger brother, accompanied by three friends, walked back to the individual's home to collect the money owed. Again, they walked by Holland's home, but they did not see Holland.

[¶ 8] At approximately 1:00 a.m., they left the individual's home to return to the younger brother's apartment. As the younger brother, the older brother, and a friend turned onto South Street, Holland was standing on the sidewalk just outside the opening in the fence that surrounds Holland's property. Because of the older brother's no-contact bail condition, he remained across the street from Holland's home, while the younger brother walked towards Holland.

[¶ 9] Standing face-to-face, approximately two feet apart, the younger brother pushed Holland in the chest with two open-faced palms. Holland took one step back, pulled a nine millimeter Glock pistol from his waistband, and shot the younger brother in the chest. The younger brother collapsed to the ground.

[¶ 10] . A friend of the victims, who was approximately ten to fifteen feet from the shooting, ran towards the younger brother. Holland pointed the gun toward the friend's face and told him to back up. Holland did not shoot the victims' friend. Instead, Holland shot the older brother

three times as he was running across the street screaming, "You shot my brother!" Holland shot the older brother in the chest, upper abdomen, and back of his elbow. The victims, who were shirtless, were unarmed; Holland was the only person observed with any type of weapon that night.

[¶ 11] Holland retreated into his home after shooting the victims. Hearing the gunshots, Holland's neighbor left the neighbor's house to offer assistance. While the neighbor was attending to the younger brother, Holland opened his door and asked him, "What's going on?" The neighbor advised Holland to stay in the house.

[¶ 12] The victims were pronounced dead on arrival at Southern Maine Medical Center in Biddeford.

[¶ 13] Law enforcement secured the perimeter of Holland's house. Nearly four hours later, after negotiating with the police, Holland surrendered. After searching the exterior and interior of Holland's home, the police found (1) five shell casings on the street; (2) a Glock magazine with cartridges on the ground behind Holland's house; (3) a nine millimeter Glock gun on his roof; and (4) a 2002 edition of a book containing title 17–A of the Maine criminal statutes, tabbed on a page that addresses a defendant's culpable states of mind, on the floor in his house.

[¶ 14] The York County grand jury indicted Holland for two counts of intentional or knowing murder, 17–A M.R.S. § 201(1)(A), for the murder of Derek and Gage Greene, and one count of possession of a firearm by a prohibited person (Class C), 15 M.R.S. § 393(1)(A–1)(3) (2011).[1] Holland pleaded not guilty to the three

1. On October 1, 2010, the court severed Count III from Count I and II on the grounds that the inclusion of Count III would create a risk of undue prejudice. After the trial, the State dismissed Count III because Holland was found guilty of two counts of murder.

charges. Venue for trial was changed to the Penobscot Judicial Center in Bangor.

[¶ 15] Prior to trial, the court denied motions in limine filed by Holland to: (1) exclude any reference to the Maine Criminal Code book; (2) allow evidence, not known to Holland prior to the shooting, of the violent natures and reputations of the brothers; (3) allow evidence from a 2007 civil trial, except anything that Holland stated regarding that case on June 30, 2009; and (4) exclude evidence of Holland's possession of a firearm prior to June 30, 2009.[2]

[¶ 16] Holland's eight-day jury trial began on October 25, 2010. As was his right, Holland elected not to testify. Because the evidence generated a self-defense claim, the court instructed the jury on the elements of self-defense. On November 3, 2010, the jury found Holland guilty of both counts of intentional or knowing murder.

[¶ 17] The court conducted a sentencing hearing on February 7, 2011. Holland was sentenced to two life sentences, to be served concurrently, for the intentional or knowing murders of the two brothers. Holland timely appealed the convictions and was granted leave to appeal his sentence by the Sentence Review Panel, pursuant to M.R.App. P. 20.

## II. LEGAL ANALYSIS

### A. Motions in Limine

#### 1. Victims' Characters

[¶ 18] Holland contends that the court erred in excluding evidence of the victims' violent reputations, even if Holland may have been unaware of their reputations at the time of the shootings. Holland urges us to follow Fed.R.Evid. 404(a)(2), rather than M.R. Evid. 404(b), when determining the admissibility of evidence of a victim's character in a case with a self-defense issue.

[¶ 19] Rule 404(b) of the Maine Rules of Evidence provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith." In essence, M.R. Evid. 404(b) makes evidence of a victim's violent nature inadmissible to prove that the victim was violent on a given occasion. See State v. Stanley, 2000 ME 22, ¶ 8, 745 A.2d 981. However, when a defendant raises the defense of self-defense, "this rule does not keep out the victim's reputation for violence, proved to have been known to the accused before the event, for the purpose of showing his reasonable apprehension of immediate danger." M.R. Evid. 404 Advisers' Note; see Stanley, 2000 ME 22, ¶ 13, 745 A.2d 981.

[¶ 20] Pursuant to the federal rule, as Holland suggests, "evidence of a pertinent character trait of the victim of the crime" may be admissible, "such as reputation of the victim for violence to support a claim of self-defense in a homicide case." Field & Murray, Maine Evidence § 404.3 at 139–40 (6th ed.2007). The federal rule does not require that the defendant be aware of the victim's character or reputation in order for the evidence to be admissible. See 2 Weinstein & Berger, Weinstein's Federal Evidence § 404.11[3][a] at 404–29 (2nd ed.2008).

[¶ 21] Our decision to diverge from the federal rule was intentional.[3] Reputation evidence not known to the ac-

---

**2.** The court did exclude evidence that Holland was prohibited from possessing a firearm due to his status as a previously convicted felon.

**3.** "Questions concerning the admissibility of evidence in state courts are largely matters of state law; federal due process allows the states substantial latitude in formulating their own rules of evidence." State v. Lagasse, 410 A.2d 537, 542 (Me.1980).

cused "is omitted from [Rule 404] because it has slight probative value and is likely to be highly prejudicial, so as to divert attention from what actually occurred." M.R. Evid. 404 Advisers' Note; *see State v. Lagasse*, 410 A.2d 537, 542 (Me.1980) ("[t]his rationally devised rule of evidence, designed to avoid diverting the jury's attention from the real issues, is not fundamentally unfair ..."); *see also State v. Leone*, 581 A.2d 394, 399–400 (Me.1990). The court did not abuse its discretion when it refused to admit evidence of the victims' reputations for violence that was not known to Holland prior to the events on June 30, 2009. *Leone*, 581 A.2d at 399; *see also State v. Rickett*, 2009 ME 22, ¶ 9, 967 A.2d 671 (trial court's denial of a motion in limine reviewed for an abuse of discretion).

### 2. Maine Criminal Statutes Book

[¶ 22] Holland contends that admitting a 2002 book containing the Maine Criminal Code, which was tabbed to the culpable states of mind section of the Code[4] and found in Holland's house by the police following the shooting, was unfairly prejudicial. He asserts that the probative value is substantially outweighed by unfair prejudice, pursuant to M.R. Evid. 403.

[¶ 23] While the book containing the Maine Criminal Code was admitted into evidence, it was not sent into the jury room for deliberations. Instead, the court advised the jury that if they wanted to view the book and the tabbed page, they could request to view the exhibit and it would be shown to them under the supervision of a court officer. While the record is unclear on this point, the jury apparent-

ly requested and was allowed to view the book under the supervision of a court officer at some point during the deliberations. There is no indication that during this viewing, the jury looked at anything but the tabbed page. The statements of law regarding culpable mental states in the book would have been similar to the jury instructions regarding culpable states of mind that the jury had already heard.

[¶ 24] Rule 403 of the Maine Rules of Evidence serves as a guard against *unfair* prejudice. Evidence that is damaging to a party's position, which is the purpose of much evidence offered by an adverse party, does not rise to the level of unfair prejudice. *See State v. Forbes*, 445 A.2d 8, 12 (Me.1982). To be unfairly prejudicial, the evidence must have an "undue tendency to move the tribunal to decide on an improper basis, commonly, though not always, an emotional one." *Id.* (quoting *State v. Hurd*, 360 A.2d 525, 527 n. 5 (Me.1976)).

[¶ 25] Here, the record does not reveal any unfair prejudice from the admission of and/or from the jury's viewing of the book. The book, tabbed to the page containing the statute regarding culpable states of mind, was relevant to the issue of Holland's state of mind, specifically whether he acted intentionally, knowingly, or in self-defense. The court did not err in admitting the book into evidence.

### 3. Statements from a Civil Trial

[¶ 26] We next consider the court's evidentiary ruling excluding statements from a 2007 civil trial involving a claim by Holland against Robert Kalex arising out of a July 2000 incident.[5] We

---

4. Title 17–A M.R.S.A. § 35 (1983) defines culpable states of mind. Title 17–A M.R.S.A. § 35 has since been amended. P.L.2007, ch. 173, § 8 (effective Sept. 20, 2007) (codified at 17–A M.R.S. § 35 (2011)).

5. The facts leading to the civil action are addressed in our opinion in *State v. Kalex*, 2002 ME 26, 789 A.2d 1286. In the civil action, Holland claimed intentional infliction of emotional distress and negligent infliction of emotional distress due to Kalex allegedly

review the court's decision for obvious error or prejudice.[6] Holland contends that statements from the *Kalex* trial should have been admitted into evidence because they demonstrate his state of mind the night of June 30, 2009, and his predisposition to escalate a confrontation when threatened and assaulted.

[¶ 27] The events of June 30, 2009, were nine years after the events leading to the *Kalex* trial. Except for Holland, no one involved in the 2009 incident had any connection to individuals involved in the 2000 incident. Further, there is no evidence in the record that indicates that the victims vandalized Holland's property or used racial epithets in reference to him. The court properly excluded this evidence as too remote and unrelated to the events of June 30, 2009.

**B. Sufficiency of the Evidence to Disprove Holland's Claim of Self–Defense**

[¶ 28] The State had the burden of disproving that Holland acted in self-defense. *See State v. Michaud*, 1998 ME 251, ¶ 16, 724 A.2d 1222; 17–A M.R.S. § 101(1) (2011). We review the sufficiency of the evidence "in the light most favorable to the State" when determining if "the evidence is sufficient to disprove every element of self-defense beyond a reasonable doubt." *Michaud*, 1998 ME 251, ¶ 19, 724 A.2d 1222. Pursuant to 17–A M.R.S. § 108(2)(A)(1) (2011), "[a] person is justified in using deadly force upon another person [w]hen the person reasonably believes it necessary and reasonably believes

such other person is ... [a]bout to use unlawful, deadly force against the person."

[¶ 29] Here, there is no evidence that either of the victims or anyone associated with them used or threatened deadly force that would justify Holland's deadly response on June 30, 2009. The jury could rationally have found that the State disproved each element of self-defense beyond a reasonable doubt. *See State v. Clark*, 2008 ME 136, ¶ 18, 954 A.2d 1066; *Michaud*, 1998 ME 251, ¶ 19, 724 A.2d 1222.

**C. Reopening the State's Case–in–Chief**

[¶ 30] During the State's case-in-chief, many witnesses testified that they knew Holland personally and referenced him by name. Additionally, the jury watched a video of Holland's interview at the Biddeford police station. However, no witness identified Holland in the courtroom. Immediately after the State rested its case, Holland orally moved for judgment of acquittal on the ground that the State failed to identify Holland as the defendant in the case. Denying the motion, the court allowed the State to reopen its case to permit a police detective, who did not witness the shootings, to make an in-court identification of Holland.

[¶ 31] We review the court's ruling on a motion to reopen for an abuse of discretion. *State v. White*, 460 A.2d 1017, 1023 (Me.1983). In determining a motion to reopen, several factors should be weighed including (1) "the potential preju-

---

parading in Ku Klux Klan robes in front of Holland's house and "shouting racial epithets and spray painting racially derogatory statements on a fence on [Holland's] property." *Holland v. Kalex*, 2007 WL 6647417, 2007 Me.Super. LEXIS 136, *1–2 (July 11, 2007).

**6.** In this case, the court denied Holland's preliminary motion in limine to admit statements from the *Kalex* trial, but indicated to

Holland that he was "free to raise [the issue] based upon how the evidence develops." At trial, Holland did not renew his motion to admit statements from the *Kalex* trial. Because the court's ruling on the motion in limine was not absolute and Holland did not renew his request for the admission of the evidence, the evidentiary issue was not preserved.

dice to the opposing party," (2) "the probative value of the proffered evidence," and (3) "the moving party's excuse for the untimeliness of its offer." *Id.*; *see also State v. Larson*, 577 A.2d 767, 770–71 (Me.1990).

[¶ 32] Here, Holland was not prejudiced when the court permitted the State to reopen its case. The evidence presented by the State's witnesses that they knew Holland personally, as well as the video of Holland's interview at the police station, established the identity of the defendant as Holland.

[¶ 33] "We have never insisted ... that a record of the in-court identification of an accused be made in any particular form." *State v. Guptill*, 481 A.2d 772, 775 (Me.1984). In a case "where many of the witnesses know the defendant personally and where identification is not in issue, the absence of a recital by the prosecutor has no impact upon our assessment of the sufficiency of the evidence." *Id.*

[¶ 34] In *State v. Jackson*, we held that a police officer's in-court identification of the defendant after "the court allowed the State to reopen its case for the purpose of identifying him" was permissible, despite the fact that the police officer was not a witness to the crime. 1997 ME 174, ¶¶ 14–15, 697 A.2d 1328. We reasoned that the "testimony of the witnesses, who knew [the defendant] personally, even without the in-court identification by [the police officer], presented the jury with sufficient evidence on which to decide the issue of [the defendant's] identity." *Id.* ¶ 15.

[¶ 35] Here, analogous to *Jackson*, a detective, who did not witness the shooting, made the in-court identification after the court allowed the State to reopen its case. Even without the detective's in-court identification, the jury was presented with sufficient evidence to decide the issue of Holland's identity.

**D. Denial of the Motion for Mistrial**

[¶ 36] Holland apparently moved for mistrial, off the record, after the State asked an allegedly prejudicial question to a firearms expert. The question related to whether a meeting about the investigation had occurred after the victims' funerals. After Holland commented about the question, it was withdrawn. The appellant, here Holland, bears the burden of persuasion on appeal. *Bizier v. Town of Turner*, 2011 ME 116, ¶ 18, 32 A.3d 1048; *Anderson v. Me. Pub. Emps. Ret. Sys.*, 2009 ME 134, ¶ 3, 985 A.2d 501. Holland has demonstrated no unfair prejudice arising from the withdrawn question.

**E. The Court's Sentencing Analysis for the Two Counts of Intentional or Knowing Murder**

[¶ 37] Holland contends that the court erred in setting the basic sentence, pursuant to 17–A M.R.S. § 1252–C(1), because of the court's failure to compare the circumstances of Holland's crimes with the circumstances of other similar crimes and rank Holland's crimes on a continuum with those other crimes. Additionally, Holland contends that the court erred in setting the maximum sentence, pursuant to 17–A M.R.S. § 1252–C(2), because the court failed to consider mitigating factors, including his fear of the victims, his retreat into his home after the shooting, and his surrender to law enforcement.

[¶ 38] We review the court's determination of the basic sentence on the first step of the analysis de novo for misapplication of law. *See State v. Waterman*, 2010 ME 45, ¶ 42, 995 A.2d 243. For murder, the defendant "shall be sentenced to imprisonment for life or for any term of years that is not less than 25." 17–A M.R.S. § 1251 (2011). The court considers only the nature and seriousness of the crime, not the individual circumstances of

the defendant, when setting the basic sentence. *See State v. Stanislaw,* 2011 ME 67, ¶¶ 9–11, 21 A.3d 91; *State v. Carr,* 1998 ME 237, ¶ 5, 719 A.2d 531; 17–A M.R.S. § 1252–C(1).

[¶ 39] The court placed Holland's offense in the category of the most serious, setting the basic sentence at life imprisonment, because there was sufficient evidence to infer that Holland acted with premeditation-in-fact, intended to cause multiple deaths at the time of the shootings, and anticipated serious consequences for his acts because he had previously been convicted of a crime, attempted murder of his fifteen-month-old daughter, involving the use of deadly force against a person. *See State v. Shortsleeves,* 580 A.2d 145, 149–50 (Me.1990) (listing aggravating factors that may justify a life sentence); *State v. Fortune,* 2011 ME 125, ¶ 41, 34 A.3d 1115; *see also State v. Hutchinson,* 2009 ME 44, ¶ 38, 969 A.2d 923.

[¶ 40] Contrary to Holland's contention, the court is "not required to elucidate all the possible means by which the defendant's crime may be committed, ... and then assign the basic sentence according to where the defendant's conduct falls on that spectrum." *State v. Schofield,* 2006 ME 101, ¶ 11, 904 A.2d 409. The court's finding that Holland chose and executed his victims is sufficient for his crimes to be considered among the most serious ways in which the crime might be committed. The court did not misapply law in setting the basic sentence of life imprisonment.

[¶ 41] After determining the basic sentence, "[t]he court shall next determine the maximum period of imprisonment to be imposed by considering all other relevant sentencing factors, both aggravating and mitigating, appropriate to that case." 17–A M.R.S. § 1252–C(2). We review the court's determination of the maximum sentence for an abuse of discretion. *Waterman,* 2010 ME 45, ¶ 42, 995 A.2d 243. The court is not required "to assign a specific weight to each aggravating or mitigating factor...." *State v. Cook,* 2011 ME 94, ¶ 12, 26 A.3d 834.

[¶ 42] The court did not find any mitigating factors. The court found three aggravating factors: (1) Holland showed "no remorse, no acceptance of responsibility," and he was "prepared to blame [the older brother and younger brother] for their deaths"; (2) Holland's extensive criminal history; and (3) the record in this case. Given that the aggravating factors outweigh the complete lack of mitigating factors, the court did not abuse its discretion in imposing concurrent life sentences.

[¶ 43] The court committed no error in conducting the trial or in imposing sentence.

The entry is:

Judgment of conviction and sentences affirmed.